[No. 14376. In Bank. — March 30, 1892.]

M. WILSON, APPELLANT, v. CALIFORNIA CEN-
TRAL RAILROAD COMPANY, RESPONDENT.

NEW TRIAL — CONFLICT OF EVIDENCE — MOTION HEARD BEFORE DIFFER-
ENT JUDGE — ORDER GRANTING. — Notwithstanding a conflict in the
evidence, a new trial may be granted by the lower court on the ground
that the verdict was against the evidence on a material issue, although
the judge who heard and determined the motion for a new trial had not
tried the case nor heard the evidence. In determining the motion, the
lower court is not governed by the same rule that prevails in the appel-
late court as to conflicting evidence.

COMMON CARRIER — STORAGE IN WAREHOUSE — ACTION LIES ON CONTRACT
AFTER STORAGE. — A failure of a common carrier to deliver the goods
carried on demand, without lawful excuse, even after the transit has
ceased, and the goods have been stored in a warehouse at the place of
consignment, is a breach of the carrier's original contract, for which suit
may be brought upon that contract.

ID. — BURDEN OF PROOF TO SHOW ABSENCE OF NEGLIGENCE — LOSS BY
FIRE. — Where a common carrier of goods is sued on his contract of car-
riage for a failure to safely carry and deliver the goods at the place of
consignment, and sets up in defense that after the arrival of the goods
they were stored in a warehouse, and were there destroyed by fire without
his negligence or fault, the burden of proving this defense, including the
loss by fire without negligence or fault on his part, is on him.

ID. — UNREASONABLE DELAY TO REMOVE GOODS. — Under the circumstan-
ces of this case, the delay of the consignee for three months to remove
the goods from the warehouse in which they had been stored by the car-
rier, upon their arrival at the place of consignment, cannot be held as
matter of law to have been unreasonable.

ID. — CARRIER'S LIABILITY AS WAREHOUSEMAN — NOTICE OF ARRIVAL. —
Under section 2120 of the Civil Code, a common carrier, in order to re-
duce his liability to that of a warehouseman as to goods which have
arrived at the place of consignment, and which have been stored in a
warehouse, must notify the consignee of their arrival, as required by that
section. The rule laid down in this section is not changed or qualified
by sections 3152 to 3157, inclusive, of the Political Code.

APPEAL from an order of the Superior Court of Los
Angeles County granting a new trial.

The facts are stated in the opinion.

*Wells, Monroe & Lee*, for Appellant.

*A. Brunson*, and *Curtis D. Wilbur*, for Respondent.

VANCLIEF, C. — Action to recover from defendant the value of certain household furniture which, it is alleged, the defendant, as a common carrier by railroad, in consideration of a certain sum paid it by plaintiff as freightage, *pro rata itineris,* agreed safely to carry from Indianapolis, Indiana, to Los Angeles, California, and to deliver to the plaintiff or order at the latter place, but failed and refused to do so according to said agreement, whereby said furniture was wholly lost to plaintiff, to her damage in the sum of four thousand dollars.

The answer of the defendant, for want of information or belief, denies that the furniture was worth four thousand dollars, or any sum, and then proceeds as follows: " It denies that it did not safely carry said goods pursuant to its agreement, to plaintiff's damage in the sum of four thousand dollars, or in any other sum whatever; but, on the contrary, it alleges that it safely carried said goods from the town of Barstow, where it received the same of the Atlantic and Pacific road, and delivered the same in the city of Los Angeles, at its warehouse in said city, where said goods were received on the nineteenth day of July, 1887, and were on the same day unloaded into the warehouse of this defendant at said city; and the plaintiff in this action was, on said nineteenth day of July, 1887, duly notified of the arrival of said goods, but said plaintiff wholly neglected to remove said goods from said warehouse, and negligently permitted them to remain therein until the twenty-eighth day of October, 1887, at which time said warehouse with its contents, including the goods mentioned in this complaint, was wholly and totally destroyed by fire, and that without the carelessness or negligence of this defendant."

The case was tried by a jury. Verdict for plaintiff, assessing the damages at four thousand dollars.  Judgment accordingly.

Defendant moved for a new trial, which was granted; and this appeal is by the plaintiff from the order granting a new trial.

The case was tried before Hon. H. K. S. O'Melveney, who settled the statement on motion for new trial after the expiration of his term of office, February 18, 1890; and the new trial was granted by his successor, Hon. W. H. Clark, December 13, 1890.

On granting the motion the court filed a written opinion, which is brought up with the transcript, and acquiesced in by counsel as being a correct copy, though it does not appear to have been made a part of the settled statement.

It appears by this opinion that the new trial was granted on two grounds: 1. That the verdict was against the weight of conflicting evidence on a material issue; and 2. That the court misinstructed the jury.

Appellant's counsel contend that inasmuch as it is admitted and is incontrovertible that the evidence is substantially conflicting, the court below, not having tried the case nor heard the evidence, should have been governed by the same rule that prevails in the appellate court as to conflicting evidence.

This question has been decided adversely to the views of counsel for appellant in the following cases: *Altschul* v. *Doyle,* 48 Cal. 535; *Macy* v. *Davila,* 48 Cal. 648; *Bauder* v. *Tyrrel,* 59 Cal. 100; *Blum* v. *Sunol,* 63 Cal. 343. Therefore the order granting a new trial on the ground of insufficiency of the evidence should be affirmed, without regard to what may be said or thought of the reason of the rule established by those cases, and whether the instructions to the jury were correct or not.

For purposes of the new trial, however, it is proper to pass upon other questions presented by the record and discussed by counsel, especially such as relate to the propriety of instructions given to the jury, or refused as requested.

1. The court did not err in refusing the first instruction as requested by defendant. As requested, the instruction was as follows: " 1. The court instructs you that in this case defendant *is* charged as a common carrier, and not as a warehouseman; and if you find from

the evidence that the goods sued for arrived in Los Angeles, July 19, 1887, and were at that time unloaded from the cars into defendant's warehouse, and plaintiff was notified of such arrival, then the court instructs you that defendant is not liable as a common carrier, and your verdict should be for the defendant."

That the defendant "was a common carrier of goods for hire," and, as such, received and "agreed safely to carry to Los Angeles and there to deliver to plaintiff or order" the goods in question, is admitted by the pleadings; and that defendant did safely carry the goods to Los Angeles, and there store them in its warehouse, where they were afterwards destroyed by fire, is alleged in defendant's answer, and was proved on the trial. Therefore the requested instruction must be understood as meaning that if plaintiff was properly notified of the arrival of the goods, she could not recover in this action, because the defendant was sued on its contract as a common carrier, and not as a warehouseman, even though the goods may have been destroyed through the negligence of defendant; and for the reason that the notice to the plaintiff and storage of the goods entirely discharged the defendant's obligations under the contract alleged in the complaint, although the goods had not been delivered as required by the admitted terms of that contract.

I think this is a mistake; for while it is true that the contract did not require of the defendant so great a degree of care after the arrival and proper storage of the goods as while they were *in transitu*, it nevertheless required ordinary care after storage. The different degrees of care required under different circumstances are seldom expressed in the carrier's contract, but are supplied by the law in reference to which such contracts are made, and which enters into and forms a part of such contracts. (Hutchinson on Carriers, sec. 338.) These implied legal terms of the carrier's contract require different degrees of care appropriate to changing circumstances, as well while the goods are in transit as after they reach their

destination; yet the original contract is not changed by the change of circumstances, but remains the same, and continues in force until the goods are delivered to the consignee, or until they are lost by some cause to which the negligence of the carrier did not contribute. Therefore a failure to deliver the goods on demand, even after storage, without lawful excuse, is a breach of the carrier's original contract, for which suit may be brought upon that contract.

No authority opposed to this view has been cited by counsel, and after diligent search I have been able to find none.

In *Jackson* v. *Sacramento Valley R. R. Co.*, 23 Cal. 270, wherein the complaint was upon the original carrier's contract, as in this case, it was contended that, before the plaintiff could recover, he must prove that the loss occurred before the goods reached the depot at the place to which they had been consigned. The point was disposed of by the court as follows: " We do not think this objection of the defendants to the complaint sufficient to justify us in reversing the judgment on that ground. Although the complaint is very specific in charging the defendants as common carriers, yet we do not see that they have been taken by surprise in any way, or misled thereby, or prevented from setting up every defense they may have had to the action. In this class of cases there is certainly great propriety in stating the two characters in which the defendants acted; but it is not, perhaps, essential to the sufficiency of the complaint."

I think the intention and effect of section 2120 of the Civil Code (hereinafter quoted) is merely to reduce the degree of care for which the carrier shall be held responsible after the arrival and proper storage of the goods to the same measure of care as that for which warehousemen are responsible, and that it does not imply that the storage of the goods creates a new contract which must be specially pleaded and distinguished from the original contract in order to recover the goods or the value.

It may often happen that the consignee may not know, or be able to learn, whether his goods were lost while in transit, or after their arrival, or even whether they have been lost at all. In cases of this kind, by the rule contended for, he must guess, at his peril, whether he should sue on his original contract with the carrier, or upon an implied new contract with the same person; yet this great disadvantage to the consignee is not compensated by any just advantage to the carrier, as is well illustrated in the case of *Jackson* v. *Sacramento Valley R. R. Co.*, 23 Cal. 270, and indeed by the case at bar. When, how, and where the goods were lost, if lost at all, is presumptively known to the carrier, but not to the consignee.

2. At the request of the defendant's counsel, the court gave the following instruction as to the burden of proof: "When the defendant shows that the goods sued for were destroyed by fire, then the burden of showing that such fire was the result of defendant's want of care is upon the plaintiff, and unless such want of ordinary care is shown, your verdict should be for the defendant."

As applicable to the pleadings and admitted facts, I think this instruction erroneous. While it is true, as contended by counsel for respondent, that defendant is sued upon its original contract as carrier only, it must not be overlooked that the answer admits that the defendant assumed the obligation of common carrier, as alleged in the complaint, and then, by allegations of new matter, seeks to show that, by safely carrying the goods to the point of destination, and there storing them in its warehouse, the defendant reduced its admitted obligation of common carrier to that of warehouseman; and further alleges that after they were stored in the warehouse, the goods were destroyed by fire, without negligence or fault of the defendant. The burden of proving this defense, including the loss by fire *without negligence or fault on his part*, devolved on the defendant. " When the carrier claims exemption on the ground that under the particular circumstances of the case he held the goods, not as

carrier, but as an ordinary bailee, it devolves upon him to show, not only that he has done his whole duty to effect a delivery according to the course of his business, but that he has been guilty of no negligence which has caused or contributed to the loss." (Hutchinson on Carriers, 2d ed., secs. 354, 355, and authorities cited.)

All the facts pleaded by defendant in avoidance of its confessed contractual obligation were material and necessary to constitute a defense to the action; and of course the burden of proving all such facts was upon the defendant. It will hardly be contended that the new matter pleaded would have constituted a defense without the allegation that the destruction of the goods by fire was " without the carelessness or negligence of this defendant."

Had the defendant been sued as a tort-feasor, and charged in the complaint with negligence whereby plaintiff's goods were destroyed by fire, the burden of proving the alleged negligence would have been upon the plaintiff ( *Wilson* v. *Southern Pac. R. R. Co.*, 62 Cal. 171); but not so where, as in this case, the action is upon the carrier's contract to carry and deliver goods; the alleged breach being a failure to carry *and deliver* according to the contract, and the defense being that the goods were destroyed by fire, *without the carelessness or negligence of the defendant.* As a general rule, the burden is on the defendant to prove new matter alleged as a defense ( *Osborn* v. *Hendrickson*, 8 Cal. 31; *Piercy* v. *Sabin*, 10 Cal. 22; *Kuhland* v. *Sedgwick*, 17 Cal. 124; *Bryan* v. *Maume*, 28 Cal. 244; *Mulford* v. *Estudillo*, 32 Cal. 136), even though it requires the proof of a negative. " It makes no difference, therefore, whether the actor is plaintiff or defendant, so far as concerns the burden of proof. If he undertake to make a case, whether affirmative or negative, this case must be made out by him, or judgment must go against him. Hence it may be stated, as a test admitting of universal application, that whether the proposition be affirmative or negative, the party against whom judgment would be given as to a particular issue, supposing no proof be

offered on either side, has on him, whether he be plaintiff or defendant, the burden of proof, which he must satisfactorily sustain. If there is a case made out against a defendant, on which, if the plaintiff should close, a judgment would be entered against the defendant, then the defendant has on him the burden of proving a case by which the plaintiff's case will be defeated." (Wharton on Evidence, sec. 357, and authorities cited.)

Again, at section 362, the same author says: " When a person who contracts to perform a particular duty to another person or thing is sued for negligent injury to such person or thing, then the plaintiff need only prove the injury; and the burden is on the defendant to excuse himself by proof of the exercise of due diligence. What such diligence is depends upon the nature of the contract, as elsewhere discussed. That it must be proved as an excusatory defense by the defendant, and that the burden is on him to do so, is plain. The defendant has engaged to perform a particular duty, and the suit is for the non-performance of such duty. That the defendant failed to perform his duty through negligence is not part of the plaintiff's case. The plaintiff, it is true, in proving the non-performance of duty by the defendant, may bring out such incidents as show negligence on the part of the defendant. But it is not a necessity of the plaintiff's case to do this, and if the defendant desire to relieve himself by showing a due performance of duty, he must do so either by directly traversing the plaintiff's case as to the fact of injury, or by proving (and the burden is on the defendant to do this) that the injury occurred without his particular fault. A creditor, for instance, receives a piece of silver plate in pawn. If this is lost without any *culpa* on his part, he must prove this fact, in order to be released from liability. A herd of goats is taken by a herdsman to pasture. They are carried off by robbers without the fault of the herdsman. It is not necessary for the owner to prove want of due care in the herdsman, but the burden is on the herdsman to prove

that the loss of the herd was not due to want of care by himself."

In the following three sections, 363, 364, and 365, the author states the effect of the distinction between actions upon contract and actions on tort upon the burden of proof. The failure to observe this distinction has probably occasioned much of the conflict of the cases upon this point. The conflicting cases are referred to and discussed in notes to the above citations from Hutchinson on Carriers and Wharton on Evidence, and the conclusions of these authors seem to be sound on principle, and supported by a preponderance of the well-considered cases. The opposing conclusion seems utterly to disregard elementary principles of pleading and evidence. A cause of action upon contract consists merely of a breach of the contract (the contract, of course, being a necessary condition), and the plaintiff need allege and prove only the contract, the breach, and the debt, or resulting damages; whereas a cause of action *ex delicto* consists of a tort which the plaintiff must allege and prove, whether it be culpable negligence or other violation of plaintiff's right. Our Code of Civil Procedure (sec. 426) requires only the facts " constituting the cause of action " to be stated in the complaint, and section 437 requires that the answer shall contain a denial of such material allegations of the complaint as are controverted by the defendant, and a statement of any new matter constituting a defense or counterclaim. Section 1869 requires each party to prove his own affirmative allegations, and also his negative allegations when they are " an essential part of the statement of the right or title on which the cause of action or defense is founded." (*Kohler* v. *Wells, Fargo & Co.*, 26 Cal. 611.)

Negligence of the defendant is no essential part of the statement of the right or title on which plaintiff's cause of action is founded; but the negative of such negligence is an essential part of the statement on which the defense is founded, if it may be properly called a negative when it is only equivalent to an affirmative allegation of

ordinary care, and considering that it might have been proved by affirmative evidence of ordinary care.

"Sec. 1981. The party holding the affirmative of the issue must produce the evidence to prove it; therefore, the burden of proof lies on the party who would be defeated if no evidence were given on either side."

While the logic of this section seems a little obscure, the conclusion is in harmony with section 1869, and doubtless the whole section was intended to be so, and should be so construed.

3. The court did not err in refusing the following instruction, requested by the defendant: "A consignee has a reasonable time within which to remove goods from the cars of a common carrier into its warehouse; and the court instructs you that three months is a reasonable time in this case, and it was her duty to have removed them within that time, and their loss by fire subsequently to that time relieves defendant from any liability for said goods or their value, unless you find from the evidence that such fire was caused by the want of ordinary care by defendant; and the burden of showing such want of ordinary care is on the plaintiff, who must prove that the defendant had, by some act or omission, violated some duty, by reason of which the fire originated, or that some negligence or want of care, such as a prudent man would take under similar circumstances of his own property, caused or permitted, or contributed to cause or permit, the fire by which the property was destroyed; and in the absence of such proof, you should find for the defendant."

This instruction is erroneous as to the burden of proof, for reasons above stated.

Nor do I think, under the circumstances, the jury should have been instructed as matter of law that three months was a reasonable time within which it was the duty of the plaintiff to remove her goods.

The goods were shipped and the freightage paid at Indianapolis, Indiana, on the thirtieth day of June, 1887, and consigned to the plaintiff at Los Angeles,

where they arrived on July 19, 1887. After the shipment, the plaintiff, who is a widow, started to Los Angeles, intending to arrive there before the arrival of the goods, but on account of her sickness was compelled to stop at Chicago, from which place, on July 13th, she wrote the following letter: —

"CHICAGO, ILL., July 13, 1887.

"FREIGHT AGENT, CALIFORNIA SOUTHERN OR SANTA FE, LOS ANGELES.

"*Dear Sir,* — Have you household furniture for Mrs. M. Wilson at your depot, shipped from Indianapolis, Ind., about June 30th, via I. B. W., C. & A., and Santa Fé (I presume, — I don't know)? Mrs. Wilson is sick here, and cannot come on as soon as her furniture. Will you please take care of same, and store in fire-proof warehouse if at your depot. She will be there as soon as she is able. Please answer at once and very much oblige,

"Yours truly,

"M. L. WILSON,

"1245 Michigan Ave., Chicago, Ill.

"P. S. — If not at your depot, please tell me where it will be.                               WILSON."

This letter was received by the defendant, as appeared by the testimony of its agents, after the arrival of the goods, but not later than July 21st, on which day the defendant wrote and posted the following answer:—

"LOS ANGELES STATION, July 21, 1887.

"MRS. M. WILSON, Chicago.

"*Dear Madam,* — Replying to yours of the 15th inst., I beg to advise you that H. H. goods to your address were received on the 19th of this month and are now stored in our warehouse, where I shall hold them subject to your order.      Yours truly,

"E. CHAMBERS, Ag't.

"M."

This letter, **not** being directed to the address of the plaintiff as given in her letter of July 13th, viz, "1245 Michigan Ave., Chicago, Ill.," was not received by her,

and was returned to defendant about two months after it was written.   As to whether or not the defendant gave plaintiff the notice required by section 2120 of the Civil Code, the evidence is conflicting.   On the part of the defendant, the evidence tends to prove that upon the arrival of the goods, — July 19th, — the defendant, not knowing the address of the plaintiff, dropped a postal-card in the post-office at Los Angeles, addressed to her at that place, notifying her of the arrival of the goods.   On the part of the plaintiff, the evidence tended to prove that no such postal-card, or any other letter than that of July 21st, addressed to Chicago, was ever addressed to defendant at any place and posted.   Within one or two days from the time the goods arrived, the defendant had notice, by the letter of July 13th, that plaintiff was sick at Chicago, and did not know when she would be able to travel; and by the same letter was directed to store the goods in a fire-proof warehouse to await her arrival at Los Angeles, and requested to answer at once.   The answer to this letter, being defectively addressed, was not received by plaintiff, of which the defendant had notice by its being returned two months from its date.   Furthermore, the evidence for plaintiff tended to prove that the defendant never in any way notified plaintiff of the arrival or storage of the goods, unless the defectively addressed letter, which was not received, constituted constructive notice, which I think it did not.   Under this state of the evidence, it seems to me that the court properly refused to instruct the jury that the reasonable time within which plaintiff should have removed her goods was limited to three months from the date of their arrival.

4. As to the other instructions given by the court, it is only necessary to say that they were quite as favorable to respondent as it was entitled to ask.   If any of them are erroneous, none of them is so to the prejudice of respondent.   Further than this it is unnecessary to decide, since counsel for appellant have made no point on them.

5. Respondent's counsel contend that " the storage of

freight by a common carrier (by railroad) in its warehouse at the point of destination, either with *or without* notice to the consignee of the arrival thereof, changes the liability of the common carrier, as such, to that of warehouseman.

Upon this point, prior to the enactment of our codes, the authorities were irreconcilably conflicting; and it seems to have been the object of the legislature to settle the question in this state by sections 2118, 2119, and 2120 of the Civil Code, section 2120 being as follows: —

" If, for any reason, a carrier does not deliver freight to the consignee or his agent personally, he must give notice to the consignee of its arrival, and keep the same in safety, upon his responsibility as a warehouseman, until the consignee has had a reasonable time to remove it. If the place of residence or business of the consignee be unknown to the carrier, he may give the notice by letter dropped into the nearest post-office."

The plain meaning of this section seems to be, that, in order to reduce the responsibility of the carrier to that of a warehouseman, the notice required by the section must be given. Nor is this meaning changed or qualified by sections 3152 to 3157, inclusive, of the Political Code, as claimed by respondent's counsel. The general subject of the article composed of these sections is " *unclaimed property* " which has been received by common carriers, express companies, commission merchants, innkeepers, or warehousemen for transportation or safekeeping; and the principal object of the article is, to give each of these classes of bailees a lien upon such property for their reasonable charges for freightage or storage, and power to sell so much thereof as may be necessary to pay such charges. Beyond this special subject-matter it does not purport to prescribe or define the duties or obligations of common carriers; whereas the subject-matter of the article of the Civil Code, including section 2120, above quoted, is " *obligations of the carrier*"; and this article particularly prescribes and

defines the obligations and duties of common carriers alone.

Furthermore, section 2120 of the Civil Code is a re-enactment of the original section as amended by act of March 30, 1874, entitled "An act to amend the Civil Code." (See Stats. 1873–74, p. 247.) Section 286 of this amendatory act (p. 268) provides that "all provisions of law inconsistent with the provisions of this act are hereby repealed." Therefore, if there is anything in the sections of the Political Code above cited inconsistent with section 2120 of the Civil Code, then, to the extent of the inconsistency, they are repealed, since they were in force before the passage of the act above referred to amending the Civil Code, and have never since been amended.

The rule requiring railroad companies to give notice to consignees of the arrival of their goods, so far as practicable, in order to reduce the liability of the carrier to that of a warehouseman, irrespective of statutory enactment, seems to be founded upon the better reason, and supported by the weight of authority in other states and in England. (Hutchinson on Carriers, secs. 373, 374, and notes.)

Upon the sole ground that the court below found that the verdict was contrary to the weight of evidence on the issue as to notice of the arrival of the goods, I think the order granting a new trial should be affirmed.

BELCHER, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order granting a new trial is affirmed.