[Civ. No. 5060.   Second Appellate District, Division One.—August 6, 1927.]

E. E. GRASS, Respondent, v. THE RINDGE COMPANY (a Corporation), Appellant.

Wheaton A. Gray, Grant Jackson and M. F. Mitchell for Appellant.

Chandler, Wright & Ward, Meserve & Meserve and Timon E. Owens for Respondent.

McLUCAS, J., *pro tem.*—This is an appeal by the defendant from a judgment in favor of the plaintiff as assignee of Meserve & Meserve, attorneys at law, for a balance due of attorney's fees for services rendered by Edwin A. Meserve to defendant corporation. The complaint alleged that defendant employed Edwin A. Meserve and Shirley E. Meserve as its attorneys to represent said defendant in all proceedings connected with and growing out of the Broadway opening proceedings in the city of Los Angeles, soon after said pro-. ceedings were initiated in the spring of 1913; that the said Edwin A. Meserve and Shirley E. Meserve, and particularly the said Edwin A. Meserve, under said employment rendered services for said defendant in various proceedings before the city council of Los Angeles and in various actions commenced in the superior court of Los Angeles County, some of which were appealed to the district court of appeal and to the supreme court of the state of California; that the said services so rendered were and are of the reasonable value of $32,500, which said sum the defendant agreed to pay therefor; that no part of said sum has been paid other than the sum of $6,250, which was paid by said defendant on account, the balance of $26,250 remaining unpaid; that on or about the nineteenth day of January, 1917, at the special instance and request of said defendant, said Edwin A. and Shirley E. Meserve ceased to be attorneys for the said defendant in the matter of the said opening of Broadway. The answer alleges that defendant employed Edwin A. Meserve alone to perform the services set forth in the complaint; denies that said services were or are of the reasonable value of $32,500, or any sum in excess of the sum of $6,250

actually paid to said Edwin A. Meserve; denies that defendant agreed to pay said sum of $32,500, or any other sum in excess of $6,250; and denies that the said sum of $26,250, or any other sum, remains unpaid. For a separate defense, the defendant alleged that at the time of the employment of the said Edwin A. Meserve no agreement was made as to what he should receive for his services; but that some time thereafter, on or about May 6, 1914, a retainer fee of $1,250 was paid to said Edwin A. Meserve, at his special instance and request, by the defendant; that thereafter, on or about July 28, 1914, the said Edwin A. Meserve requested the defendant to pay him the further sum of $6,250 for the services performed and to be performed by him in said litigation referred to in the complaint; that the said Edwin A. Meserve stated that he would charge defendant nothing more whatever, unless by virtue of the future proceedings he should save defendant something; that said Edwin A. Meserve did not succeed in saving any sum for the defendant; that thereafter and before the proceedings in the matter were concluded, he insisted upon retiring from the case and refused to proceed further with the case unless he should be paid at once the sum of $5,000, and thereby compelled the substitution of another attorney and thereby failed and refused to proceed to a conclusion of said proceedings, or to a point where it could be determined that he, the said Meserve, had saved anything for the defendant, and that he has in fact saved no sum or thing for the defendant; that thereafter and subsequent to the payment of said sum of $6,250 defendant heard nothing from said Edwin A. Meserve touching the matter of fees in said case for nearly two years, or until the month of March, 1916, when the defendant received two letters from the said Edwin A. Meserve, notifying the defendant that it would be necessary for the said Meserve to go to San Francisco and appear before the supreme court on a petition for a rehearing in said case, presenting a bill for $200 to cover a fee and expenses for the trip to San Francisco, as being separate from the regular work of the case; that defendant, relying upon said representation that said trip was separate from the regular work of the case, paid to said Meserve the said sum of $200. Defendant further al-

leged that all of defendant's agreements have been fully performed, and all of plaintiff's demands sued for have been fully paid, and that no interest is due or payable on any claim sued upon. By way of cross-complaint, the defendant sues upon an account stated for a balance of $296.23. The case was tried before a jury and a verdict for plaintiff was returned in the sum of $25,795.22. Judgment was entered accordingly on March 14, 1924, and reduced to $17,200 by order of court on April 10, 1924.

On June 28, 1921, defendant moved the court to dismiss the action upon the ground that plaintiff without reasonable excuse had failed to prosecute the same for a period of more than four years and three months after the filing of the answer on March 8, 1917. In support of the motion for dismissal, defendant filed the affidavits of Wheaton A. Gray, attorney for defendant, and F. B. Scotton, manager for defendant corporation. It appears from the affidavit of Wheaton A. Gray that on July 19, 1917, said cause was duly set for trial on January 2, 1918, and thereafter continued thirteen times by agreement of the parties; that said continuances were as a rule made at the suggestion of plaintiff's attorney; that on October 4, 1920, said case, on motion of plaintiff, went off calendar; that on June 15, 1921, defendant was served by plaintiff with a notice of motion to set the case for trial; that these various apparent efforts to bring the case to trial, followed by the numerous continuances had, were generally accompanied by positive declarations that the case would be immediately pressed to trial, unless some settlement of it should be had in the meantime. According to the affidavit of Scotton, no officer or representative of defendant corporation ever had any purpose or intention to settle said case, but that they at all times had stated to all persons that they would not settle the case. Plaintiff filed counter-affidavits of J. P. Chandler and Edwin A. Meserve, attorneys for plaintiff, and also the affidavit of Howard W. Wright, employed in J. P. Chandler's office. It is stated in the affidavit of J. P. Chandler that Edwin A. Meserve had been trying to settle the case because he was reluctant to try an action against a former client for legal services; that the different continuances were not all made at the request of plaintiff; that several of the said continuances were at the request

of the defendant; one at the request of a mutual friend of Edgar A. Meserve and the stockholders of the defendant corporation, in order that the case might be settled if possible. "That each time that the case was set for trial and the time for trial approached, Judge Wheaton A. Gray rang up affiant and asked of affiant if Edwin A. Meserve desired to try the above entitled case at the time for which the same was set. That each time affiant stated that he would see Mr. Meserve and after seeing said Edwin A. Meserve, affiant stated to Judge Gray exactly what Mr. Meserve had stated, namely: that he would rather not try the case if it could be avoided, in the hope that the same might be settled, and if the defendant was willing and did not itself care to try the case, he, Meserve, would like to have the same continued for trial, each time in the hopes that a settlement might be arrived at. That upon affiant thus stating the matter to Judge Gray, each time Judge Gray stated in reply, in effect, that the case could be continued and reset for trial; that the said case was last continued on the 17th day of May, 1920, at which time His Honor, Judge Paul McCormick, in his department of the Superior Court, stated that if counsel did not try the case at the time to which it would be continued that the court would be obliged to strike the case from the calendar, to be reset on motion, that he could not again consent to carry the case along in that way. That defendant was advised of this position of Judge McCormick and the case, with that understanding between the parties, was continued to the 4th day of October, 1920. That shortly prior to said 4th day of October, 1920, affiant and said Wheaton A. Gray again had a conversation over the telephone in regard to the trial of the case, at which time Judge Gray again asked of affiant as to whether plaintiff desired to try the case at this time; that affiant told Judge Gray that he would consult with Edwin A. Meserve, which he did, and thereupon advised Judge Gray of what said Edwin A. Meserve had stated, namely: that he, said Edwin A. Meserve, still had hopes that the case would be settled without being tried, and that if Judge Gray was willing, he would again prefer to have the case continued even if it had to go off the calendar to be reset. That thereupon Judge Gray stated, in effect, that he was willing that such should be the course,

he being then advised that the case would not be continued by Judge McCormick to a definite date, but would be ordered off the calendar to be reset. That never at any time was there the slightest suggestion of any kind or character that plaintiff did not intend to try said case in the event the same could not be settled; on the contrary, each and every time that affiant talked with Judge Wheaton A. Gray, the attorney for the defendant, about a continuance or about the case not being tried at the time for which the same was set, or about its being off the calendar, affiant stated in effect to said Wheaton A. Gray that said Edwin A. Meserve still hoped that the case might be settled without the necessity of trial, and Judge Gray each time was informed, in effect, that if the same could not be settled that the case would have to be tried.'' Edwin A. Meserve in his affidavit states: ''That at one time affiant was approached by Mr. George I. Cochran, President of the Pacific Mutual Life Insurance Company, a friend of affiant's and a friend and business associate of the four stockholders of the defendant corporation. That said stockholders are all members of one family, namely: the Rindge family. That Mr. Cochran stated to affiant that if said action could not be continued, he would have Mr. Fred Rindge come to Los Angeles and confer with affiant to see if said action could not be settled. That affiant conferred with Mr. Rindge and told him the minimum amount at which he would settle. That Mr. Rindge was not willing to pay said amount. That the conference between affiant and Mr. Rindge was very agreeable and pleasant, and so far as the same was personal, did not even take on the form of a dispute. That affiant stated to Mr. Rindge that he could not settle said dispute or claim for any less than the amount which affiant then stated to Mr. Rindge. That from time to time thereafter it was suggested to affiant, by friends of both parties, that the same could still be settled without litigation, and among those who stated said fact to affiant was Mr. Henry W. O'Melveny, through whom affiant was employed in the actions resulting in the claim for attorney's fees presented in this action. That whenever the case was set for trial and before the time when the case was to be called for trial, affiant was consulted by Mr. J. P. Chandler, who stated that he had talked with

Judge Wheaton A. Gray and that Judge Wheaton A. Gray wanted to know whether or not affiant would want said case tried on the day for which the same was set. That affiant each time told Mr. Chandler to state to Judge Gray that he was still in hopes said case could be settled, that he did not desire to try that kind of a case if it could be avoided, and that therefore it would please him if the case could be continued to some later date in the hopes of such a settlement.'' Howard W. Wright, an attorney associated with J. P. Chandler, made affidavit that affiant was present in court on May 17, 1920, after being informed by J. P. Chandler that it was the desire of the parties that the trial be continued to October, 1920, ''and informed the court that the parties to the above entitled action had agreed that the trial of the same might be continued until some day in October, 1920; whereupon the court announced that if the said case was not tried upon the 4th day of October, 1920, that the court would order the said cause off the calendar to be restored upon motion of either party. That on or about the 3rd day of October, 1920, affiant was informed by Jefferson P. Chandler, Esq., that negotiations for a settlement of the above entitled action were pending, and that it was understood between the parties thereto that the matter might go off calendar, and that therefore it was unnecessary for anyone to be present in court on the 4th day of October, 1920. That affiant further states that on or about the 22nd day of June, 1921, he examined the minute orders of the clerk in Department 15 of the above entitled court, and that said minutes show that on the 4th day of October, 1920, the above entitled cause went off calendar, to be restored upon motion of either counsel, and the following order was thereupon made: '*E. E. Grass* v. *The Rindge Co. etc., et al.,* No. B 47645. No one appearing, cause off calendar, to be restored upon motion of either counsel.' '' Wheaton A. Gray made affidavit in rebuttal: ''That as attorney for the defendant in the above entitled action he received no instructions from his client, or from any other source at any time to the effect that the said Rindge Company desired a continuance of said cause, nor did he receive any instructions to continue the case, nor did he ever request or desire a continuance on his client's account, or at his client's desire. He was, however,

at all times ready and willing to grant a continuance and did consent to all the continuances that were had, except the last, which were each and all made at the request of the plaintiff and her attorney. That while the plaintiff or her attorney frequently requested a settlement of the case this affiant always replied to the offer of settlement to the effect that his client would not under any circumstances consent to any settlement, and would not pay to the plaintiff a single dollar in the way of settlement. That this affiant carefully avoided holding out any hope to the plaintiff or her attorneys that any settlement of the case whatever could be had short of an absolute dismissal of it on the part of the plaintiff without the payment of any money whatever. That this affiant knows that the officers, attorneys and agents of the defendant each and all were of the firm purpose at all times to refuse to and abstain from paying any sum whatever to the plaintiff or to her assignor on account of the matter set up in the complaint. That affiant stated the same as emphatically as it could be stated to the attorney for the plaintiff every time said attorney said anything to him about settlement. That since said suit was begun there never has been any negotiation for a settlement or a compromise of this case. entered into in which defendant or any of its officers, agents or attorneys took any part whatever. That each and all of the same have at all times declared that no settlement or compromise of the case could be had and they have each and all taken particular pains to impart to the plaintiff, her assignor, agents and attorneys a knowledge of their purposes and intentions in this regard. That no attorney for the defendant was present on the 17th day of May, 1920, at which time His Honor, Judge Paul McCormick, stated that if counsel did not try the case at the time to which it would be continued that the court would be obliged to strike the case from the calendar. That this affiant is the only attorney of the defendant, and that neither this affiant, nor any other representative of the defendant was present at the time said case was dropped from the calendar. That he received notice over the telephone from Mr. Chandler that it was so dropped. That affiant was not advised in connection with said case going off the calendar that it would be ordered off the calendar to be reset, but on the contrary he

was advised by Mr. Chandler after it had been ordered off the calendar that it had been so ordered off the calendar and nothing was said by Mr. Chandler at that or any other time about its ever being thereafter reset or about its being thereafter to be set, nor did affiant ever agree or stipulate orally or in writing that the case should again be reset for trial after it was ordered off the calendar by Judge McCormick for failure to prosecute as aforesaid, and that while as a fact, and as alleged in Mr. Chandler's affidavit, he, as attorney for plaintiff, did frequently inform this affiant that said case would have to be tried unless it was settled, this affiant met all such statements with the reply that there was no possibility of ever settling the case; that he had talked with Mrs. Rindge, the president of the corporation defendant, and that he knew she would never consent to any settlement and that Mr. Meserve was acquainted with Mrs. Rindge and ought to know her well enough to know that when she said there would be no settlement no settlement could be had.'' The motion for dismissal was denied. On July 19, 1917, on plaintiff's motion, the case was set down for trial on January 2, 1918, and was thereafter continued by consent of the parties eight times until, on January 27, 1922, the trial of said action, by consent, went off calendar, and on said day the parties entered into a stipulation in writing that said case was set for trial on February 3, 1922; that the five years within which the action must be brought to trial under section 583 of the Code of Civil Procedure, will expire on the seventh day of March, 1922; and that the attorney for the defendant had requested the plaintiff to continue said trial. It was stipulated as follows: ''Now, therefore, in consideration of consenting to such continuance by plaintiff, it is hereby stipulated that the period of time which shall expire between the date of this stipulation and the trial of said action, shall not be considered should any question arise in said cause concerning the prosecution thereof, and that said plaintiff shall not be held to have failed to prosecute said action during said period covered by this stipulation. It is further stipulated that the time provided by section 583 of the Code of Civil Procedure of the state of California, for the bringing of an action on for trial after the filing of an answer, is hereby extended

and enlarged so as to include the time when said action shall thereafter be brought on for trial, and so as not to in any way be a bar to the plaintiff hereafter bringing said action on for trial whether the same be now reset for a later date or go off the calendar to hereafter be set on further motion. It is the understanding of the parties hereto and the intent of this stipulation that when said cause is finally tried that it shall then be deemed to have been tried within the statutory time as provided in section 583, Code of Civil Procedure.'' Said stipulation was approved by the court and the court ordered the time extended for the bringing of said action on for trial as in said stipulation provided. On May 20, 1922, said action was set down for trial on the tenth day of July, 1922. On May 26th the case was continued, at the request of defendant, to December 18, 1922, subject to the stipulation of January 27, 1922. Thereafter said case was continued seven different times, subject to said stipulation of January 27, 1922; two of said continuances being on request of defendant. On March 4, 1924, the case went to trial, and the trial proceeded without any objection from defendant.

Appellant assigns as error the denial of the motion for dismissal, basing its argument upon the provisions of section 583 of the Code of Civil Procedure, which reads: ''The court may in its discretion dismiss any action for want of prosecution on motion of the defendant and after due notice to the plaintiff, whenever plaintiff has failed for two years after answer filed to bring such action to trial. Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court on its own motion, unless such action is brought to trial within five years after the defendant has filed his answer, except where the parties have stipulated in writing that the time may be extended.'' Appellant asserts that while this section of the code gives the court discretion in the matter, yet this discretion is not an arbitrary discretion to be exercised just as the judge may desire, whether or not any excuse for the delay is offered; that the true rule is: ''That where a delay is had for a period exceeding two years, and no reasonable excuse is offered for it, the

case must be dismissed whether the judge wants to dismiss it or not, and the burden is on the plaintiff to show and satisfy the mind of the court not only that he had an excuse for this long delay, but that such excuse was what is known in law, and is considered in the decisions of the court heretofore rendered, a reasonable excuse.'' In *Anderson* v. *Superior Court*, 187 Cal. 95 [200 Pac. 963], it was held that in the absence of a written stipulation that the time be extended, the provisions of section 583 of the Code of Civil Procedure, requiring dismissal of the action unless such action is brought to trial within five years after the defendant has filed his answer, are mandatory and that the trial court was without discretion to refuse an order of dismissal in such case. But the court further said: ''The distinction between a mandatory and discretionary act is illustrated by the two provisions of section 583. The first clause provides a discretionary ground of dismissal for want of diligent prosecution of an action after two years, and the action of the court in granting or refusing to dismiss could not be controlled by *mandamus* or *certiorari,* at least in the absence of clear abuse of discretion; while the second clause makes a fixed and arbitrary rule that requires the performance of 'an act which the law specially enjoins' and which gives jurisdiction for the exercise of the writ of mandate under section 1085 of the Code of Civil Procedure.'' Upon examination of the foregoing affidavits, we are unable to say that there was any abuse of discretion on the part of the trial court in denying the motion for dismissal. The affidavits are conflicting in many particulars, especially in regard to compromising the litigation; but it does appear without question that the case was continued may times with the consent of the defendant before the denial of the motion to dismiss on June 27, 1921. Under the authorities and the provisions of section 583 of the Code of Civil Procedure, dismissal would have been mandatory upon motion of the defendant and notice to the plaintiff, or by the court on its own motion, unless the action had been brought to trial within five years after the defendant had filed his answer, except where the parties have stipulated in writing that the time may be extended, as was done in the case at bar. But here the motion for dismissal was made before such five years had

expired, and dismissal of the action was not mandatory on the court, but discretionary under the provisions of section 583 of the Code of Civil Procedure. In our opinion, under the showing made at the hearing on the motion, it cannot be held as a matter of law by this court that the trial court failed to exercise a sound discretion in the denial of such motion for dismissal. Appellant's claim that section 583 of the Code of Civil Procedure was adopted to strengthen the rule requiring the plaintiff to bring the case on for trial "within two years" unless the plaintiff "has some excuse for (not) bringing it on which appeals to the court's sense of justice," is untenable. In *Romero* v. *Snyder*, 167 Cal. 216 [138 Pac. 1002], it was held, under the provisions of section 583 of the Code of Civil Procedure, that in an action where an answer has been filed the court should not dismiss the action for want of prosecution, unless the plaintiff has delayed for two years thereafter to bring the action to trial; that after two years of such inaction, a dismissal is discretionary, but that when it is continued for five years the action "shall be dismissed." See, also, to similar effect, *Johnston* v. *Baker*, 167 Cal. 260 [139 Pac. 86]. In *Bailey* v. *Taaffe*, 29 Cal. 423, 424, the term "discretion" is defined as follows: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case, this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubted whether the excuse offered is sufficient or not, or whether the defense set up is with or without merit *in foro legis*, when examined under those rules of law by which judges are guided to a conclusion, the judgment of the court below will not be disturbed. If, on the contrary, we are satisfied beyond a reasonable doubt that the court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other." The foregoing definition was quoted with approval in *Ferris* v. *Wood*, 144 Cal. 426, 428 [77 Pac.

1037], and in *Raggio* v. *Southern Pacific Co.*, 181 Cal. 472, 475 [185 Pac. 171, 172]. The general rule is that the disposition of a motion to dismiss an action for want of prosecution rests in the discretion of the trial court, and that its action on such motion will not be disturbed here unless such discretion has been grossly abused. (*Marks* v. *Keenan,* 148 Cal. 161 [82 Pac. 772]; *Martin* v. *City and County of San Francisco,* 113 Cal. 575 [63 Pac. 913]; *First Nat. Bank* v. *Nason,* 115 Cal. 626 [47 Pac. 595]; *Seymour* v. *Wood,* 63 Cal. 81; *Grigsby* v. *Napa County,* 36 Cal. 585, 588 [95 Am. Dec. 213].) In *Rickey Land* etc. *Co.* v. *Glader,* 153 Cal. 179, 180 [94 Pac. 768], the court said: ''In every case where a dismissal of the action has been denied, the discretionary ruling of the trial court has been upheld. (*Neihaus* v. *Morgan,* 5 Cal. Unrep. 391 [45 Pac. 255]; *Rosenthal* v. *McMann,* 93 Cal. 505 [29 Pac. 121]; *In re McDevitt,* 95 Cal. 17 [30 Pac. 101]; *Marshall* v. *Taylor,* 97 Cal. 422 [32 Pac. 515]; *San Jose R. Co.* v. *San Jose L. & W. Co.,* 126 Cal. 322 [58 Pac. 824].)'' In *Witter* v. *Phelps,* 163 Cal. 655 [126 Pac. 593], the court holds that in reversing an order dismissing an action for undue delay in serving summons, in so far as affidavits presented by the respective parties were conflicting, it must be assumed that the court below found the facts to be as asserted by the prevailing party. In *First Nat. Bank* v. *Nason,* 115 Cal. 626, 628 [47 Pac. 595], it was held that when the delay had been at the instance and request of the defendant, the court would properly refuse to dismiss. Wheaton A. Gray in his affidavit stated that the continuances as a rule were made at the suggestion of plaintiff's attorney. J. P. Chandler in his affidavit states that the different continuances were not all made at the request of plaintiff, but that to the best of his recollection several of such continuances were at the instance and at the request of the defendant. In his affidavit in rebuttal Wheaton A. Gray declares that all of the continuances were at the request of plaintiff and her attorney, but that defendant consented to all of the continuances that were had, except the last. Thus a direct conflict appears in the affidavit as to which party requested the continuances. There is likewise some conflict as to the efforts to compromise the litigation. The affidavits of J. P. Chandler, Edwin A. Meserve, and Howard W. Wright tend to

show that some effort was being made to compromise the case and that each time a continuance was discussed between the attorneys for the parties and consented to by defendant's attorney, the desire and hope of plaintiff that the case could be settled without trial was communicated to Wheaton A. Gray, attorney for defendant, and that upon each continuance so consented to by defendant, Wheaton A. Gray was informed that if the case could not be settled it would have to be tried. Wheaton A. Gray in his affidavit in rebuttal states that plaintiff and her attorney frequently requested a settlement of the case, but that he always replied to the offer of settlement to the effect that his client would not under any circumstances consent to any settlement. In *Ferris* v. *Wood*, 144 Cal. 426, 429 [77 Pac. 1037], the supreme court held that the discretion of the trial court in dismissing the action was improperly exercised. In that case an offer of settlement had been made by the defendant, while here no offer of settlement was made by the defendant. In that case the summons was not served until two years and one month after the complaint was filed. The court said, page 429: "The judgment upon which the action is brought is unpaid. An effort to compromise that judgment was in progress by the parties after the summons issued, and for this reason plaintiff caused the delay in the service. To have served the summons pending these negotiations might, as plaintiff feared, embarrass the settlement. It seems to us that the delay was reasonably accounted for and excused, and that the order of the court did not tend to subserve, but rather to impede or defeat, the ends of substantial justice." ▉ While in the case at bar there was no offer of settlement by either party, yet the desire of the plaintiff to settle the case was communicated to the defendant as a ground for the continuances, and the defendant thereupon consented to the continuances. Paraphrasing the language quoted above— to have pressed the case to trial pending these negotiations might embarrass a possible settlement. To so find, under all the circumstances in this case, would not, in our opinion, be an abuse of discretion on the part of the trial court, when the defendant consented to the many continuances under these circumstances. We have examined the cases cited by defendant, holding the defendant not to be under any

duty to bring the case to trial and affirming judgments of dismissal in those cases, but do not believe them to be controlling in the case at bar, since the action of the trial court in this and in similar cases is to be determined by an exercise of sound discretion. It was held under the facts in those cases that there was no abuse of discretion on the part of the trial court in granting a dismissal. In this case we hold there was no abuse of discretion under the facts in the case on the part of the trial court in refusing a dismissal.

In this case, after the motion to dismiss was denied on January 27, 1922, the parties entered into a stipulation which recited, among other things, that the defendant did not desire to try said action February 3, 1922, and requested plaintiff's attorney to continue said trial. In consideration of consenting to such continuance by the plaintiff, it was stipulated "that when said cause is finally tried that it shall then be deemed to have been tried within the statutory time as provided in section 583, Code of Civil Procedure." After further continuances, subject to said stipulation, the case was called for trial on March 5, 1924, and no objection whatever to the trial of said action proceeding was made by the defendant, and defendant did not at said trial, nor at any time since June 28, 1921, in any manner object to said case going to trial, or to any of the proceedings being taken to continue said action for trial, or continuing the same on the calendar; nor did defendant at any time during the trial of said action in any manner object to the trial of said action proceeding, or make any suggestion that the trial of said action had been so long delayed that the same should not proceed. Respondent urges that, in view of the stipulation made by defendant and of the trial itself without any objection, defendant is now estopped to claim error on the part of the trial court in denying the motion to dismiss. However, for the purpose of the decision of this case, we do not deem it necessary to hold that defendant is thus estopped.

It is the contention of appellant that the verdict is not supported by the evidence. The complaint, as we have seen, is for the value of attorneys' services, alleged to be of the reasonable value of $32,500, on which the sum of $6,250 had been paid, leaving a balance of $26,250.

The verdict of the jury was for $25,795.22. An examination of the evidence as to the value of the services discloses that there was a sharp conflict between the witnesses for appellant and those for respondent as to such value. Attorneys competent and experienced in this character of litigation testified the reasonable value of said services to be as low as $7,500 and as high as $55,000. Under such circumstances, the issue as to the value of the services was closed by the finding of the jury. In *Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25], where a judgment for attorney's fees in the sum of $300,000 was affirmed, the court said, page 251: ''The question as to the reasonable value of the services rendered by the plaintiff was submitted to a number of able and competent attorneys, who testified in the case. Some of them advanced a lower figure than that claimed by him, but others fixed their value at amounts far in excess of that established by the verdict. Consequently the issue as to the value of the services may be considered as having been closed by the finding of the jury.'' In *Estate of Duffill*, 188 Cal. 536 [206 Pac. 42], the court held that a fee of $75,000 was not unreasonable. It is contended in the case at bar that the services rendered by Mr. Meserve after the payment of the sum of $6,250 were of no value to appellant. In this connection the supreme court said in *Estate of Duffill, supra,* at page 553: ''The fact that in certain branches of the litigation the trustees were unsuccessful does not necessarily exclude the services performed by its attorney in connection therewith from the consideration of the court when fixing the attorney's fee.''

It appeared from the record that Mr. Meserve had been engaged in the practice of law since 1886, and had tried a large number of condemnation cases, appearing for the owners of the property sought to be condemned. In this case the value of the property involved was large. The litigation was difficult and skill was required. The sum allowed for the property taken was $426,000, and the sum assessed for benefits to the property not taken was $150,000. The work done included preliminary appearances before the city council; service in the preparation and trial of the condemnation suit; appearances before the city council in the matter of a protest; a *certiorari* case and an injunction case; subsequent protests and appearances before

the city council; a second *certiorari* case, and the filing of a petition before the supreme court; and services in a second injunction proceeding. In 3 California Jurisprudence, page 698, the following rule is declared: "In determining what constitutes a reasonable fee, the court will take into consideration the following factors: The nature of the litigation, its difficulty, the amount involved, the skill required, the skill employed, the attention given, the success or failure of the attorney's efforts, and the attorney's skill and learning, including his age and experience in the particular type of work demanded."

The important question in the case is whether as alleged in the answer, on July 28, 1914, subsequent to the original employment "it was agreed and understood between said Edwin A. Meserve and this defendant that the said sum of $6,250.00 then and there paid by this defendant to said Edwin A. Meserve should be and constitute full payment and satisfaction of and for all the services theretofore performed, or thereafter to be performed, by said Meserve in any and every proceeding for or connected with opening of said Broadway through the lots and land of defendant, unless said Edwin A. Meserve should by the proceedings to be brought in the future save the defendant something that it would otherwise lose." It will serve no good purpose to attempt a minute review of the evidence submitted in the case in the court below. The evidence is sharply conflicting. The case of the plaintiff on this branch of the case rests largely upon the testimony of E. A. Meserve, who was an interested witness; likewise the witnesses for the defense were interested. E. A. Meserve testified as a witness for the plaintiff that he was employed by H. W. O'Melveny, who was acting as attorney for the defendant in other matters; that there was no agreement made as to compensation; but he received a retainer of $1,250 on May 6, 1914; that on July 31, 1914, he received a check on account of fees in the sum of $6,250; that he had no recollection of any conversation with his clients relating to this payment, either immediately prior or immediately subsequent to its receipt, but that on July 24, 1916, he had written a letter to defendant requesting a further payment of the sum of $5,000 on account; that Mr. Scotton, manager for defendant com-

pany, called at his office on July 28, 1916, and "stated to me that Mrs. Rindge was surprised that I should request a further payment on account of fees, stating that she and Fred understood that when the $6,250 payment was made I would not expect any more pay, or ask for any more pay until all the cases were over and the whole thing was at an end, and then only in the event I had won more money for them." The witness further testified: "Mr. Scotton then stated that Mrs. Rindge and Fred recollected very distinctly that I had stated that there would be no further payment on account of fees until all the work was done, and then only in the event I succeeded in getting something for them in addition to the award. I said, 'Well, Mr. Scotton, I don't see how that could be so, or what it was I could have said that Mrs. Rindge heard, or how any conversation of that kind occurred, or what could have been said in it, for at the time that check was paid there was no proceeding of any kind or character contemplated except the proceeding in the condemnation suit and the carrying of that case on, with all the work that would have to be done in perfecting the appeal in that case and getting up the transcript.'" F. B. Scotton testified that he was assistant manager of defendant corporation and secretary to Mrs. Rindge; that "upon July 28th, shortly after the noon hour, Mr. Meserve telephoned to the Rindge Company office and I answered the 'phone. He asked me to get a check for him from the Rindge Company for $6250 on account of fees in the Tenth and Broadway case, and I told him that I would do so. After having hung up the phone, I went and explained the matter to Mrs. Rindge, who was in the front office. . . . I told Mr. Meserve that Mrs. Rindge had refused to sign the check for $6250, the call that he had made, and the reason was that it was too large a check for the services that he had rendered. Mr. Meserve stated, or told me to tell Mrs. Rindge, that he thought that was the right size of check, or the right amount to pay at that time, and that he wished very much to have payment made to him, especially at that time, and if the payment was made that that would be all that there would be that the Rindge Company would have to pay, unless he saved them something or made them something. . . . After having seen Mrs. Rindge I had

another conversation with Mr. Meserve when I handed him the check for $6250 that had been signed by the Rindge Company. I told him that Mrs. Ringe had signed the check after I had explained to her his statement to me as to what the check would cover." The witness further testified: "Q. By Mr. Gray: Now, after that, did you have any conversation with Mr. Meserve about his compensation? A. Yes, sir; about two months afterwards. Mr. Meserve, Mrs. Rindge, Mr. Fred Rindge and myself were present in Mr. Meserve's office. Mr. Meserve told Mrs. Rindge, Mr. Fred Rindge and myself that in connection with that check for $6,250, that the Rindge Company had paid him before he went away on his vacation, that that check was to cover all of his services in the Tenth and Broadway case unless he saved the Rindge Company something or made them something." The witness further testified: "I had a talk with Mr. Meserve in July, 1916, when he called for the $5,000 installment. Mr. Meserve and myself were the only ones present at that conversation. After the call had been made by Mr. Meserve for $5,000, which was on or about the 20th or the 24th of July, 1916, upon the request of Mrs. Rindge I went to Mr. Meserve's office, and told him that Mrs. Rindge objected to the payment of the $5,000 call fee that he had made, because she did not consider that there was any payment due him, because he had not saved the Rindge Company anything or made them anything in the litigation that had taken place since July, 1914, and there was no reason why the Rindge Company should make any further payment until he had saved or made them something. Mr. Meserve stated at that time that he could not understand or remember what he could have said to us that would have led us to have any such idea as that in our minds. I told him that he did make such a statement and that I had repeated it to Mrs. Rindge, and that the Rindge Company had acted upon that basis ever since." Frederick H. Rindge testified that he was vice-president and a stockholder in defendant corporation; that after the payment of the $6,250 check, and after Mr. Meserve had returned from his vacation about a month or six weeks later, "Mr. Meserve stated that he would not charge us any more for this bunch of cases unless he saved us something or

made us something.'' Mrs. May K. Rindge testified that she was president and manager of the Rindge Company; that after Mr. Meserve had returned from his vacation she was in his office with her son Fred Rindge and Mr. Scotton, and had a conversation with Mr. Meserve about the $6,250 check. The witness further testified: ''I think Mr. Meserve said it was a big check, but that there would be nothing more to pay unless he won something for us, or unless he saved something for us. . . . '' Edwin A. Meserve testified in rebuttal: ''Q. By Mr. Chandler: You heard the testimony of Mr. Scotton as to a conversation at the time of the delivery of the check to you? A. I did. That conversation did not occur. No conversation of any kind occurred at that time on that subject with Mr. Scotton. Q. Did you have any talk with Mr. Scotton, Mrs. Rindge or Fred Rindge, in the presence of Mr. Scotton, or Mr. Scotton and Mr. Fred Rindge, or Mr. Scotton and Mr. Fred Rindge and Mrs. Rindge before December 14, 1914, regarding any possible or probable action to be brought by the Rindge Company, or on its behalf attacking or affecting any question of assessments? A. I did not. . . . Q. Did Mr. Scotton, either before or at the time he brought the check for $6250 to you, tell you what Mrs. Rindge had said regarding the same, or that Mrs. Rindge had said anything regarding it? A. He did not. Q. Did you tell Mr. Scotton, Mr. Fred Rindge and Mrs. Rindge as testified to by Mr. Fred Rindge, that that fee would take care of the whole batch of those cases, or the batch of cases? A. I did not. . . . Q. By Mr. Chandler: Was there ever any discussion at any time between you and Mr. Scotton and Mrs. Rindge and Mr. Fred Rindge about all of these cases, considered as a whole, until the controversy arose in the summer and fall of 1916 regarding your fee? A. There was not. . . . Q. Was there ever any discussion about a contingent fee to be made out of the settlement, except such as arose after the controversy about your fees in 1916? A. There never was any discussion or conversation regarding a contingent fee of any kind or character at any time. Q. When you wrote the letter in the summer of 1915, asking for the payment of $5000 on account, did you then know that the Rindge Company or Mrs. Rindge or any member of that company then understood or believed that you

were not to charge any fee to that company in addition to the $7500 which you had already been paid? A. No I did not. Q. Was there ever any conversation between you and Mr. Scotton, or between you and any other member of the Rindge Company in which you agreed that the $7500 already paid would cover all your fees unless you made something for the Rindge Company? The Court: Or saved something for them? A. There was not. Q. July, 1914, when you received the check for $6250 had there been any talk whatever of or concerning any possible litigation in the matter of the opening of Broadway, except the condemnation suit? A. There had not. Q. Up to that time had there been any talk about saving or making any money for the Rindge Company? A. Not after the entry of the judgment in the condemnation suit. That was not the purpose of the prosecution of the appeal." ■ All of the circumstances of the employment of respondent's assignor by the appellant were placed before the jury *in extenso*. Whether or not, in view of the situation of the parties and their relation to the entire transaction, it was likely or probable that they contracted in the manner claimed by appellant was the peculiar province of the jury to determine. ■ Where the evidence is in conflict, if there be substantial evidence to support the conclusion reached by the trial court, the conclusion is not open to review on appeal. ■ In our opinion there was sufficient evidence in the present case to support the verdict. In *Treadwell* v. *Nickel, supra,* the supreme court said: "The sufficiency of the evidence to establish a given fact, even where the law requires proof of the facts to be clear and convincing, is primarily a question for the trial court and the jury, and if there be substantial evidence to support the conclusion reached below, the finding is not open to review on appeal. (*Steinberger* v. *Young,* 175 Cal. 81, 84 [165 Pac. 432].) We are not called upon to say that the evidence in the record is entirely plain and convincing. To the extent that its determination rests upon a mere preponderance of evidence, or upon the consideration of conflicting or contradictory evidence, the finding in the lower court is not subject to review in this court. (*Wadleigh* v. *Phelps,* 149 Cal. 627, 638 [87 Pac. 93]; *De Kahn* v. *Chase,* 177 Cal. 281, 283 [170 Pac. 608].)"

The trial court instructed the jury that the burden was upon the defendant to prove by a preponderance of the evidence that the arrangements which had theretofore existed between defendant and Mr. Meserve, namely, that he was to work for what his services were reasonably worth, had been at a later time changed in the respects claimed by the defendant. Other instructions of similar import were given. Appellant assigns the giving of such instructions as error. The answer sets up the new contract as an affirmative defense. The rule with respect to burden of proof is well settled. When plaintiff proved the extent and character of services and the reasonable value thereof, if no evidence had been offered on the part of defendant, judgment must have gone for plaintiff. The defendant in setting up an affirmative defense as a rule assumes the full burden of proof on such issue. (24 Cal. Jur., p. 774; 10 Cal. Jur., p. 787, and cases cited.) Section 1869 of the Code of Civil Procedure provides: ''Each party must prove his own affirmative allegations.'' In *Wilson* v. *California C. R. R. Co.,* 94 Cal. 166 [17 L. R. A. 685, 29 Pac. 861], it is said: ''As a general rule, the burden is on the defendant to prove new matter alleged as a defense (*Osborn* v. *Hendrickson,* 8 Cal. 31; *Piercy* v. *Sabin,* 10 Cal. 22 [70 Am. Dec. 692]; *Kuhland* v. *Sedgwick,* 17 Cal. 124; *Bryan* v. *Maume,* 28 Cal. 244; *Mulford* v. *Estudillo,* 32 Cal. 131), even though it requires the proof of a negative. 'It makes no difference, therefore, whether the actor is plaintiff or defendant, so far as concerns the burden of proof. If he undertakes to make a case, whether affirmative or negative, this case must be made out by him, or judgment must go against him. Hence it may be stated, as a test admitting of universal application, that whether the proposition be affirmative or negative, the party against whom judgment would be given as to a particular issue, supposing no proof be offered on either side, has on him, whether he be plaintiff or defendant, the burden of proof, which he must satisfactorily sustain. If there is a case made out against a defendant, on which, if the plaintiff should close, a judgment would be entered against the defendant, then the defendant has on him the burden of proving a case by which the plaintiff's case will be defeated.' (Wharton on Evidence, sec. 357, and authorities cited.)''

In *Prince* v. *Kennedy*, 3 Cal. App. 404 [85 Pac. 859], the court says: "The burden is on the party alleging an affirmative defense to prove it." To the same effect, see *Bettens* v. *Hoover*, 12 Cal. 313 [107 Pac. 329]. We have examined the case of *Scott* v. *Wood*, 81 Cal. 398 [22 Pac. 871], relied upon by appellant, but we do not think it decisive of the case at bar, for the reason that the facts and pleadings in that case are to be distinguished from the present case in many respects. Under all the circumstances of this case, we find no error in the instructions as to burden of proof, especially in view of the fact that the court summed up the instructions as follows: "Going over practically the same thing again, if you find that no contract was entered into between Mr. Meserve and the Rindge Company on the 31st day of July, 1914, as alleged in defendant's answer, and that plaintiff is entitled to recover payment beyond the $7500 paid, then and in such event, plaintiff in this case is entitled to a verdict at your hands for such amount as would be a reasonable fee to have been charged by Mr. Meserve for all of the services rendered by him, crediting thereon the $7500, and the other amount that I have told you to credit, and figure in the interest on the amount you find up to date." In this case the contract of employment was admitted, and the jury was instructed that the burden rests upon the plaintiff to prove his services and the value of his services.

It is next claimed that the court erred in its instructions as to interest. The jury was instructed that if they found for plaintiff they should allow interest from January 22, 1917. The instruction was clearly erroneous. No interest is available on a *quantum meruit* prior to decision of the case. (*Macomber* v. *Bigelow*, 123 Cal. 532 [56 Pac. 449].) The question was raised on the motion for new trial. The court stated that he was satisfied from the authorities presented by appellant that interest was not allowable, to which Mr. Meserve acceded and stated "that $17,200 figured at seven per cent per annum between the two dates named in the instruction brings it to a cent"; whereupon the court ruled: "The motion for a new trial will be granted unless the plaintiff consents to reduce the judgment to $17,200." Mr. Meserve then consented and the

court denied the motion for new trial. No objection was then made by appellant to the amount of the reduction in the judgment. ▇ The reduction of the judgment in the sum of $8,595.22 cannot be injurious to appellant. If the jury allowed interest, then the reduction was proper. If the jury did not allow interest, appellant has not been injured. Where interest has been allowed by the jury improperly a *remittitur* of interest will cure the error. (29 Cyc. 1024, and cases cited.) ▇ Neither was the erroneous instruction for the allowance of interest in conflict with the instructions restricting the damages to be allowed to the amount prayed for in the complaint, since the jury was told to add the interest to whatever amount they found.

▇ Appellant complains of the following instruction: "The evidence given by Mrs. Rindge and Mr. Fred Rindge of a claimed subsequent conversation between them and Mr. Meserve, would not and could not make a contract such as is pleaded in this case, but can be considered only by you as bearing upon the question of whether or not the statement made by Mr. Scotton, as to the conversations testified to by him as having occurred with Mr. Meserve, were or were not true, because the conversations which Mr. Rindge and Mr. Fred Rindge claim were had in their presence, were subsequent to the time that defendant admits the check was delivered to Mr. Meserve, and such conversation with Mr. Meserve, if they occurred, thus made subsequent to such time and subsequent to the payment to Mr. Meserve of the $6250, would and could not have the effect of creating a contract between Mr. Meserve and the defendant, and are to be considered by you only as evidence bearing upon the question of whether or not the testimony of Mr. Scotton, as to the conversation which he had with Mr. Meserve was or was not true." We find no error in the foregoing instruction. It was alleged in the answer that the express contract between Mr. Meserve and the defendant company to limit the fee to $6,250 was made on or about July 28, 1914, at the time payment of the $6,250 was made. The conversations with Mrs. Rindge and Fred Rindge, mentioned in the instruction, occurred about two months thereafter, and were admissible only for the purposes stated in the instruction.

We have reviewed the many other objections of appellant to the instructions of the court and its rulings during the trial, but find no prejudicial error therein. .

It is ordered that the judgment be affirmed.

York, J., concurred, and Houser, Acting P. J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the district court of appeal on September 1, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 3, 1927.