[S. F. No. 15224. In Bank.—February 27, 1935.]

FABIAN D. BROWN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Joseph A. Brown for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—This is a petition to review the recommendation of the board of governors of The State Bar that petitioner be disbarred.

Four separate proceedings were brought against petitioner before the local administrative committee. In the first case, Mrs. Katherine Egan, a former client of petitioner, charged him with misappropriation of funds. Petitioner was retained by her in June, 1931, for the purpose of filing certain actions to rescind contracts of sale of land, and was paid $125. She also paid him $25 on account of another action. Petitioner claims that he mailed notices of rescission promptly and thereafter negotiated for a settlement. But on a number of occasions, when questioned as to the progress of the actions, he told Mrs. Egan that the calendar was crowded, and the setting of the case for trial was consequently delayed. In August, 1932, more than a year after petitioner was employed and the money given him, Mrs. Egan discovered that he had not even filed the suits. Thereupon petitioner promised to repay the money advanced, and paid $45 in cash, together with an indorsed check for a further sum, which check was not paid. In January, 1933, an order to show cause was issued directing petitioner to appear before the local administrative committee, and thereafter, a few days prior to the hearing, petitioner repaid the balance of the money.

Petitioner denies that he ever told Mrs. Egan directly that the matters were actually in court. We see no merit

in this position. He did represent to his client that her case was delayed because the courts were crowded. That this was no excuse for failing to file the actions is obvious, and that it was a misrepresentation is equally obvious. Petitioner was clearly guilty of misconduct, consisting of misrepresentation and deliberate failure to perform the duties of his engagement after payment of his retainer.

In the second case, petitioner was also charged with misappropriation of funds by George Stiff, a client. In 1927 or 1928 petitioner was representing Stiff in a bankruptcy matter. It became necessary to bring an action to quiet title to land in Seattle, Washington. Stiff had paid at least $155, and according to his testimony, $175, to petitioner for his services in the bankruptcy proceeding and for costs and attorneys' fees to be incurred in the Washington action. A. H. Wiseman, a member of the Seattle bar, was engaged by petitioner to prosecute the action there, petitioner agreeing to remit the expenses and retainer. Wiseman, in May, 1929, requested that $25 be sent on account. Petitioner claims he sent it but failed to produce either the check or letter of transmittal. Wiseman denies having received it. The record shows repeated requests by Wiseman for the remittance, and repeated excuses by petitioner. The only showing of payment occurs in connection with a letter dated November 4, 1932, but actually mailed January 4, 1933, over three years after the employment and just at the time these disciplinary proceedings were being carried on. The sum of $30 was remitted at this time. During the pendency of these proceedings, petitioner made further payments: $26 on March 31, 1933, and $12 on May 5, 1933. Of the money remitted, $25 was for settlement of the action with the adverse party. Stiff's testimony was that $75 of the sum paid petitioner was to go to the Washington attorney. Whether we take his or petitioner's version as to the allocation of the money, it is sufficiently established that petitioner did not, for several years, remit any sum at all for this purpose, and that he was, in consequence, guilty of appropriating the money to his own uses.

A third complaint was made against petitioner by Fred A. Wisherop. One Elizabeth Gebhardt died in San Francisco in 1929, leaving money and securities of the value as ascertained in 1932, of $1191.43. The public administrator

took charge of the estate. Wisherop appeared to be the sole heir. He engaged petitioner to represent him in securing distribution. During the early proceedings another attorney presented a claim against the estate by an alleged heir, which was later withdrawn as fictitious. However, this other attorney succeeded in. making an arrangement subsequently with petitioner, whereby he was employed as "associate attorney" in the matter, for the sum of $500. Wisherop signed an agreement to this effect. Whether he signed the instrument in blank or after completion is a matter upon which the record is conflicting, but he testified that he had never met this other attorney and understood from petitioner's statements that said attorney was representing another heir to the estate, whose claim was to be settled for $500; that $300 was to go for counsel fees to the two attorneys, the balance to Wisherop. Eventually, on January 3, 1933, the public administrator delivered a check for $1191.43 in favor of Wisherop, to petitioner. The latter had written authority to indorse Wisherop's name, and thereupon the check was cashed. The "associate attorney" retained $500; petitioner kept the balance and did not even notify Wisherop of the receipt of the money. In February, 1933, about six weeks later, Wisherop learned from other sources that the money had been received. He demanded his share. On October 27, 1933, while this proceeding was before the local administrative committee, and after a number of continuances had been given, petitioner paid Wisherop $300, retaining $391.43 for himself.

There is nothing in the record to show that petitioner's associate performed any services in exchange for the $500 paid him, and no showing is made that the money went to a real or alleged heir. Petitioner, in thus permitting his client to be mulcted of this sum upon the representation that it was desirable in order to settle the estate, was guilty of a most serious breach of duty. The fact that he was able to secure Wisherop's signature to the authorization is certainly not a defense, and the fact that Wisherop was led to believe that his case was a weak one is still less a defense. If there were any important services performed by these attorneys, as a result of which the sole heir to an estate distributed by the public administrator received about one-fourth the sum ordered distributed to him, they certainly

should be clearly set forth and justified. Moreover, petitioner's failure to notify Wisherop of the receipt of the money, and his failure to pay over any part of it until after the proceedings against him were in progress, cannot be justified under any theory, much less by the explanation, uncorroborated by any written or other evidence, that a "dispute" arose between petitioner and his client, as a result of which Wisherop refused to accept the money.

It is unnecessary to consider the fourth case against petitioner, which the local administrative committee found to rest on evidence too uncertain to justify a recommendation of disciplinary action. Each of the other three proceedings reveals grave misconduct by petitioner in the handling of the business and money of his clients. Upon such a record, the recommendation of disbarment must be approved.

It is therefore ordered that the petitioner, Fabian D. Brown, be, and he is hereby disbarred from the further practice of law in this state, from and after the thirtieth day of April, 1935, and that his name be and it is hereby stricken from the roll of attorneys and counselors at law of the state of California, effective on and after said thirtieth day of April, 1935.

Rehearing denied.