[Civ. No. 2057.   Fourth Appellate District.—August 8, 1938.]

ALMA JOLLEY et al., Respondents, v. WALLACE CLEM-
ENS, Appellant.

Wright, Monroe, Thomas & Glenn and Wright, Monroe & Harden for Appellant.

Sloane & Steiner and John W. Holler for Respondents.

HAINES, J., *pro tem.*—Between 1 and 2 o'clock in the morning of February 10, 1937, defendant and appellant, Wallace Clemens, was driving an automobile at the rate of from 40 to 45 miles an hour in a northerly direction on his right side of what is known as Highway 101, which runs north and south between Tijuana, Mexico, and San Diego, California. In the region involved the highway is both itself level and straight and also at the approximate level of the surrounding country; that is, with neither fills nor cuts. The highway consists of a paved middle portion 36 feet wide, marked by a white line down the center of the asphalt and on either side a dirt shoulder 20 feet wide. Of the 36 feet of pavement, the middle portion constituting rather more than half of the whole is paved with asphalt, the rest constituting the outer portion on either side is oiled. Outside of this, on either side, are the dirt shoulders referred to. This makes, on either side of the center line, an aggregate of 18 feet as the combined width of the asphalt and oiled pavement plus the 20 feet of dirt shoulder. Clemens had with him three passengers; his wife, who sat at his right on the front seat, one Fern Rankin and one Don Housh, who sat behind them respectively on the rear seat. His brakes were in good condition and the range of his headlights was about 300 feet. One Joseph Melvin Jolley was, at the same time, proceeding southerly on his right side of the highway at about the same speed on a motorcycle, having behind him, as a passenger, one Smilie. It is necessary to depend largely, for an account of what occurred, upon the testimony of the appellant, Clemens, and the three others who were with him, who are the only surviving witnesses to the accident except Smilie. According to appellant the four had left his residence in San Diego between eight and nine in the evening and gone to a dance hall in Tijuana where they had a table, stayed an hour and danced. While there appellant had one "Tom Collins" (a concoction having a

basis of gin). Then they went on to Rosarita Beach where more dancing occurred and appellant had, according to his own account two or three more "Tom Collins". On the way home the party stopped at the border and talked with the officers, including traffic officer Hoard, and then came on north. Just preceding the accident appellant says he suddenly saw a large 1600 pound stray horse of a dark brown color 25 to 50 feet ahead of him somewhere between the east edge of the pavement and its center line and that it appeared to be crossing the highway, that is, going west. He thinks its hind feet were probably a few inches off the pavement, and, though he applied his brakes and turned as sharply as practicable to his left in the effort to avoid the horse, he hit its head and "front shoulders". He says that the horse might have walked a step or so in the meantime, but he is not sure. In passing the horse he first saw the motorcycle, which was then 25 to 50 feet away from where he then was. Its headlight was lighted. His own engine had been killed by the impact with the horse and he says that he was unable to avoid going further to the left side of the road into the path of the motorcycle, but he managed, after continuing a short distance, to stop. Meanwhile, to avoid Clemens' car, Jolley deflected the course of his motorcycle to the east, and, though he did not hit the automobile, he did strike the horse and was killed in that collision. Appellant restarted his engine at once and turned his car around. He and the others with him assisted Smilie, who was injured, and appellant sent his wife on with his car to town to report the accident and get help. The horse, after the accident, was lying crippled about the middle of the highway with its head pointed east. The rear part of its stomach had been punctured by the motorcycle.

Respondent, Alma Jolley, the father of the deceased, testified to having had two conversations with appellant after the accident, one alone, in which he claims that appellant said that "he had a few drinks in him and maybe if he hadn't had a few drinks and he got a little closer to the horse he would have saw the horse". At the second conference with appellant, however, when Smilie also was present, he does not claim that any such admission was made. Appellant denies any recollection of making any such statement.

Hoard, the state traffic officer, testified to an examination of the highway after the accident and finding marks on the pavement and hair where apparently the horse had been hit. These were about 40 feet north of where the horse lay. He found the motorcycle at the edge of the pavement some 65 feet from the marks. He saw no evidence of intoxication on Clemens' part, either at Tijuana when the party passed through on their way home or at the scene of the accident, though he there particularly noticed Clemens' conduct because when he had met him at the border there was a slight odor on his breath. He considered Clemens unquestionably sober. All three of the other occupants of appellant's car testified at the trial but their testimony does not sufficiently vary from appellant's own to justify restating it in detail. All claim that appellant showed no indication that night of being under the influence of liquor.

Smilie was riding, as we noticed, behind the deceased, who was a larger man, and in consequence he was unable to see forward. He says that the motorcycle was being driven about 3 feet to its right side of the center line of the highway. He remembers a "left dip" (that is, a lurching of the motorcycle to the left to avoid something), a white flash and nothing further until he waked up later that night out of a dazed condition to find himself still partially dazed, getting into an automobile. He had suffered various injuries which we need not here detail.

The present action was brought by respondents, who are Jolley's parents and claim to be his heirs at law, to recover from appellant, Clemens, and one Inouye, the owner of the horse, pecuniary damages which respondents claim to have suffered from their son's death, which they allege to have been caused by the negligence of the defendants. A nonsuit was granted in Inouye's favor but the jury found a verdict for $4,000 against Clemens, in addition to which the court's conclusions were in respondents' favor upon certain issues which had by stipulation been submitted to it, in consequence of which judgment was entered for respondents upon the verdict, and Clemens appealed.

In appellant's behalf it is claimed as grounds for reversal, (a) that there is no evidence of any negligent act or omission on appellant's part that could reasonably be found to be the proximate cause of the accident; (b) that the evidence

indicates contributory negligence; (c) that the trial court erred in refusing to submit to the jury a special interrogatory as to whether or not appellant was under the influence of liquor at the time of the accident; (d) that the trial court committed prejudicial error in its instructions; and (e) that there is no sufficient evidence that respondents were the heirs of the deceased and as such entitled to maintain the action. Each of these contentions is on behalf of respondents disputed.

The first question, then, which we have to consider is whether or not the record reveals any substantial evidence of negligence on appellant's part. Respondents claim that the jury was entitled to believe that he did not keep a proper lookout. The argument is, in brief, that his headlights penetrated the darkness for 300 feet and he is shown to have been driving along the middle of the 18-foot-wide pavement on his right side of the highway; that when he did see the horse it was directly in front of him; that, according to his own account, while he continued for the 25 to 50 feet that intervened before he reached and hit the horse, the latter in its westerly course across the road, had only taken a single step; that the horse, being a heavy one (and as Inouye, its owner, testifies, old and gentle), the jury was entitled to infer that before being actually seen it had, with equal deliberation, made its way across the 20-foot-wide dirt shoulder just east of the pavement, and that appellant ought to have seen it when at a distance of a hundred or more feet from the place where he hit it, which would have given him, if driving at a speed not greater than 45 miles per hour, ample time and space in which either to have stopped or have taken other means to avoid striking it. It is further claimed that had he been keeping a proper lookout appellant must have seen the headlight of the motorcycle long before he did see it. It is also claimed that it was the jury's right to believe, in the light of the evidence and his alleged admissions, that the liquor which he had taken while in Mexico, had in some degree impaired the sharpness of his observation and the soundness of his judgment.

While we recognize that the instant case is an exceedingly close one, it is not our function to weigh evidence, and unless we can say that the showing in support of the jury's verdict is so thoroughly deficient as to amount to no more than a

scintilla of proof, we are bound to hold that it was the exclusive province of the trial court to determine whether, on the whole, the verdict was warranted or not. We do not feel able to say, as a matter of law, that the conclusions reached were ones which reasonable men could not legitimately reach.

Neither can we say that in finding the appellant guilty of negligence the jury were bound, as a matter of law, also to find the deceased guilty of contributory negligence. The horse had not yet reached the side of the highway on which the motorcycle was, prior to the accident, running. Even if the deceased saw it the jury might reasonably conclude that he would have had plenty of room in the highway to pass in front of it but for the course taken by appellant's car. As to that, even though the deceased had seen it in time to have stopped or taken some other course than the one he did take, the jury was not bound to charge him with anticipating that appellant's engine would be stopped or that instead, after passing the horse, of returning to its own side of the highway, appellant's car would continue on so as to require the motorcycle to turn out of its path. In these circumstances it cannot be said that the jury could not legitimately have applied, in favor of the deceased, the rule that one suddenly and without his own fault confronted by an emergency is excusable for not taking every precaution that might have been expected of him in other circumstances. We do not think *Hickey* v. *Smith,* 277 Mich. 123 [268 N. W. 833], relied on by appellant in this connection, to be in point. That was a case where a loose horse was observed on the *plaintiff's* side of the highway and the plaintiff turned to his left to avoid it and was hit by the defendant's automobile coming from the opposite direction. The Supreme Court of Michigan, in reversing the judgment of the trial court, held that if the defendant ought to have seen and appreciated the situation in time to have avoided the accident, the plaintiff, by the same token, ought to have done so. Had appellant in the instant case been the plaintiff and the fact been that the decedent's motorcycle, instead of colliding with the horse, had continued in its course and collided with appellant's car, the case would have been in point, but in point to the effect that appellant could not recover.

■ Neither are we able to agree with appellant's next contention that the trial court abused its discretion in refusing to submit to the jury the question as to whether, at the time of the accident, appellant was under the influence of intoxicating liquor, and if so, whether or not that was a proximate cause of the accident. It is conceded that in a damage case the question of the submission to a jury of special issues rests within the sound discretion of the court. Appellant's argument here is that the testimony as to his drinking while in Mexico that night was materially prejudicial to him unless connected with some act of misconduct afterward. Granting that this is so, a failure, for example, to keep such reasonably proper lookout as would have enabled him to have avoided the accident, if the jury believed that there was such a failure, would, of course, have amounted to such misconduct. The extent to which appellant had been drinking was a circumstance that the jury had a right to consider in deciding whether a proper lookout had been kept. There is no claim here of appellant having been heavily intoxicated. If the liquor had any effect on the attention which he gave to the condition of the road in front of him, or upon the keenness with which he observed it, then the fact that he had taken the drinks was still but one ingredient, among other ingredients, such, for example, as the natural weariness of a person who had been without sleep until that hour in the morning, that the jury may have believed to have affected the clarity of his observation and the keenness of his judgment at the time of the accident. We do not think then, that the element of appellant's drinking stood out so prominently above the rest as necessarily to have required the emphasis of a special interrogatory.

We come then to what is, in our judgment, a more serious question. Appellant sets out in his answer as in form an affirmative defense:

"That at the time and place in said complaint alleged Joseph Melvin Jolley, deceased, was driving and operating a motorcycle in a southerly direction on said Highway 101; that as a result of an unavoidable accident Joseph Melvin Jolley, deceased, collided with a horse owned by defendant, Eijiro Inouye, which was then and there on said highway; that the damages and injuries sustained by deceased and

plaintiffs as the result thereof were due solely to said unavoidable accident.''

As bearing upon this defense appellant requested an instruction which, in so far as we need consider it, was as follows:

''In this connection you are instructed that although the defendants have presented as a defense that the death of the decedent was the result of an unavoidable accident, it does not follow that the burden rests upon either of the defendants to establish such fact by a preponderance of the evidence. To the contrary, the law presumes that the death was the result of accident until it has been established by a preponderance of the evidence that one or both of the defendants were guilty of some negligent act or omission which proximately caused the death. Unless it has been so proven, it is your duty to find that the death resulted from accident and to return a verdict for the defendants.''

The court has endorsed this instruction as ''given as modified'' but we do not find it in the instructions given in anything like the form in which it was proposed. The court did, however, include in its instructions the following:

''The burden rests upon the defendants to establish their affirmative defenses by a preponderance of the evidence in this case. However, such defenses may be established as the result of plaintiff's own evidence and in such case it would be unnecessary for the defendants to furnish any further proof.''

Also:

''When a party seeks to attribute injury of another to unavoidable accident, then the burden is on such party to make such showing by a preponderance of the evidence. No accident can be said to be unavoidable where, by the exercise of ordinary care, it could have been avoided.''

On the other hand, the court elsewhere stated:

''It is not every accident that gives rise to liability and the law recognizes that unavoidable accidents do occur and recognizes further that accidents occur under such circumstances where neither party is liable to the other. Negligence, in a case of this character, is never presumed but must be established by the plaintiffs by a preponderance of the evidence.''

The defense that an accident was unavoidable has been frequently alluded to in the decisions of courts of appellate jurisdiction in this state but has generally been somewhat incidentally dealt with, and, in these circumstances, we think it in order to state our view of its nature and bearing. Our view, in brief, is that it has no real place at all in a pleading as an affirmative defense. Sometimes what is said in an answer is that the accident involved was an "inevitable one so far as the defendant was concerned." We think it entirely clear that such an averment, though affirmative in form is in substance a mere denial that there was any negligence on the defendant's part, proximately causing the accident; that is, either a denial that the defendant was negligent, or else, a denial that any negligence of which he might have been guilty entered into the proximate cause of the accident. Generally, however, the supposed affirmative defense is more broadly stated, as in the instant case, where it is set up that decedent's collision with the horse was the "result of an unavoidable accident." This amounts, in our opinion, to no more than a denial that any negligence on appellant's part proximately caused the injury, and either to a denial that he was negligent, or else that, if he was, such negligence on his part was any part of the proximate cause of the collision, *plus* a gratuitous averment, wholly unnecessary to the defense, to the effect that the deceased also was free from negligence proximately causing the collision. Since we can hardly conceive of the defense of an unavoidable accident otherwise than in one or the other of the two forms mentioned, we think that we are not going too far in saying that, as a matter of pleading, the claim that an accident was unavoidable is never legitimately an affirmative defense at all; that its whole purpose has already been served if the denials in the answer adequately respond to the charges made. As respects unavoidable accidents the circumstance that it is logically indefensible to plead them as affirmative matter does not, of course, mean that they may not be shown in evidence; neither does it mean that they may not form a proper subject of instruction. It means merely that as a matter of pleading they are necessarily and sufficiently put in issue by a complaint on the one hand asserting an injury to have been

proximately caused by something alleged to have been negligently done or omitted by the defendant and, on the other hand, an answer denying these averments. This situation has heretofore received notice in this state. Thus in *Pearce* v. *Elbe,* 98 Cal. App. 101, 105 [276 Pac. 389, 391] (hearing denied by the Supreme Court), it was said:

"It was not error for the court to instruct on unavoidable accident at the request of the defendant. *Metcalfe* v. *Pacific Electric Ry. Co.,* 63 Cal. App. 331 [218 Pac. 486], is not authority for appellant's contention that unavoidable accident must be specially pleaded by defendant. The appellant was plaintiff in that case. He was claiming error in the refusal of the court to give his requested instruction and to meet respondent's reply, he had to contend that the point was material in the case by reason of either the evidence or special pleading. The court holds that it was neither in the evidence nor specially pleaded and so the instruction could properly be refused. That is to say, so long as defendant did not claim that defense, plaintiff was not entitled to have the jury instructed upon it. This is not a holding that this defense must be specially pleaded to be available to the defendant. Because it was not error to refuse it in that case at the request of the plaintiff does not mean that it was error to give it in this case at request of defendant. Here negligence is pleaded in general terms in the complaint. The answer denies it in general terms. The general denial of the general allegation of negligence permits the defendant to rely upon the defense of unavoidable accident. (*Lehnerts* v. *Otis Elevator Co.,* [Mo.], 256 S. W. 819, 822; 45 C. J. 1141, note 52.) The instruction was given by request of defendant and we cannot see how it could be harmful to the plaintiff who in any event had the burden of proving that the collision was occasioned solely by the negligence of the plaintiff" (evidently meaning defendant) "which, of course, would exclude unavoidable accident."

We are unable to reconcile these principles with the view that when an unavoidable accident is pleaded in the answer the burden of proving it rests on the defendant. To so hold would be to regard the mere form of his pleading rather than its substance.

Negligence is, by definition, the failure to use ordinary care or skill in the management of one's property or person.

It has often been laid down in decisions that a transgression of a statutory regulation, such, for example, as the injunction to drive on the right side of a highway is negligence *per se*. This statement is accurate enough for most purposes. However, the Supreme Court in *Cragg* v. *Los Angeles Trust Co.*, 154 Cal. 663, 667 [98 Pac. 1063, 16 Ann. Cas. 1061], thus expressed itself:

"The general rule, which is the one adopted in California, is thus stated in 1 Shearman & Redfield on Negligence, sec. 13: 'The violation of any statutory or valid municipal regulation, established for the benefit of private persons, is of itself sufficient to prove such a breach of duty as will sustain a private action for negligence brought by a person belonging to the protected class if the other elements of actionable negligence concur.' It is further said in the same section that it is the opinion of the writers that the true rule is that the violation of such a statute or ordinance is presumptive evidence of negligence, which, if not excused by other evidence, including all the surrounding circumstances, should be deemed conclusive, and as an example of what is meant by the expression as to excusing evidence it is said that, under special circumstances, a jury might excuse an omission to give signals required by a statute, as prudent under those circumstances. No attempt was made in this case to show anything in the way of excuse for failure to comply with the ordinance, and we need not consider that branch of the rule. As said above, the quotation from Shearman & Redfield states the rule adopted in this state."

*Non constat,* however, that under the stress of an emergency it may not appear to one of ordinary prudence that to shift for the moment to the left side of the highway is the safest thing to do. In such circumstances, from the very definition of negligence the conduct of the person involved is not negligent. But unless and until justification or excuse for such conduct appear it is presumptively negligent. If no justification or excuse appear the general rule applies and it must be treated as negligence *per se*. But if it do adequately appear the driver's conduct is not negligence at all. Thus in *Uhl* v. *Fertig,* 56 Cal. App. 718, 724 [206 Pac. 467], it was said:

"As a matter of law, his act in swerving toward the left when it appeared to him that a collision was imminent, instead of continuing on the right-hand side of the road, was not in itself negligence. . . . There are many cases, several of which are cited by appellant in his brief, which declare the familiar rule that where a person discovers himself in sudden peril, without sufficient time to weigh all of the surrounding circumstances, that the act which he may then do is not a negligent one, even though it may appear, upon reasoned consideration, that his choice was unwise. 'The rule, judicially stated, is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence.' (20 Ruling Case Law, p. 29.)"

We do not think that the legislative narrowing in 1935 by the enactment of section 525 of the Vehicle Code of the statutory exceptions theretofore existing to the obligation normally to drive upon the right half of the roadway, was intended to affect this situation or to apply to the conduct of drivers when suddenly and without fault on their part confronted by emergencies.

It is true that, in the instant case, the presence of appellant's car on the wrong side of the highway was in itself *prima facie* evidence of negligence and called for an explanation on his part. In that respect the situation was similar to that presented in *Parker* v. *Auschwitz*, 7 Cal. App. (2d) 693, 696 [47 Pac. (2d) 341], where it was held that the mere presence of a truck on the left or wrong side of a road, being of itself a violation of section 122 of the California Vehicle Act providing that the driver of a vehicle upon a highway of sufficient width shall drive on the right half of the highway, the burden rested on the driver to excuse or justify the presence of his truck. "This," the court said, "he attempted to do by showing the truck skidded, and while the mere skidding of an automobile is not necessarily negligence (*Smith* v. *Hollander*, 85 Cal. App. 535 [259 Pac. 958, 58 L. R. A. 268]; *Lambert* v. *Eastern Massachusetts etc. Co.*, 240 Mass. 495 [134 N. E. 340, 22 A. L. R. 1291].), the burden of establishing justification is on appellant." That, it should be said, was a case tried by the court and, therefore, involved no question of instructions. The burden referred to is that

of meeting the rebuttable presumption of negligence arising from the apparent violation of a statute. "In the rebuttal of a presumption it is not necessary to produce preponderating evidence. A presumption is overcome by evidence sufficient to balance it." (10 Cal. Jur. 752 and cases cited.)

Undoubtedly, then, in the instant case the presence where it was, of the appellant's automobile threw upon him the *onus procedendi,* that is, the burden of introducing evidence to account for its presence there, and also the *onus probandi* to the extent, but to the extent only, of an explanation sufficient to balance the presumption. This, however, is not the same thing as to require him to establish his justification by the preponderance of the evidence.

We do not think that what we have stated is necessarily inconsistent with the comment made in *State Compensation Ins. Fund* v. *Lamb,* 96 Cal. App. 236, 240 [273 Pac. 1080], where it was said:

"The defendants complain of an instruction given by the trial court, number 46. That instruction was addressed to the question as to who should prove an inevitable accident. It is difficult, under the issues made by the pleadings, to see just what was the pertinency of the subject matter. Be that as it may, the defendants introduced it in the opening statement made by their attorney and thereafter followed up the subject and introduced proof thereon. There is nothing in the case showing that there was any duty on the part of the plaintiffs to introduce evidence in support of the existence of the theory of inevitable accident, and if the subject matter be asserted as an affirmative defense, then the burden was on the defendants to make the showing."

We gather from this passage that what was involved was not any attempt to *plead* an inevitable accident, but merely an attempt to rebut a *prima facie* case made by the plaintiff on the theory that the accident was inevitable. If the plaintiff's proof did not show it to be inevitable, manifestly the *onus procedendi* to make such showing rested on the defendants. We think, however, that the characterization of such a situation as the making of "an affirmative defense" is not altogether accurate. We do not have before us the terms of the instruction referred to in the court's language which we have just quoted, but there is nothing in the language itself

to indicate that the instruction actually placed any further burden on the defendants than that which we have suggested was theirs. In any event, *State Compensation Ins. Fund* v. *Lamb, supra,* did not reach the Supreme Court and moreover was decided by the same division of the District Court of Appeal for the First District which later decided *Pearce* v. *Elbe, supra,* and must, therefore, be deemed to be limited and controlled by that case in so far, if at all, as there is any inconsistency between them. The principles laid down in *Pearce* v. *Elbe, supra,* were reiterated in *Creamer* v. *Cerrato* (hearing denied by the Supreme Court), 1 Cal. App. (2d) 441, 444, 445 [36 Pac. (2d) 1094], where it was said:

"Appellant complains of three instructions stating, in abstract terms, the rule as to the amount of care required, when acting in a sudden emergency or peril, claiming that the first placed upon her the burden of proving that the operation of the truck on its wrong side was inexcusable and the other two denied the jury the right of considering whether the driver's failure to have his truck under control was the proximate cause of the collision. . . .

"At respondents' request the jury was instructed that appellant could not recover for damages, caused by an unavoidable accident, which was defined as one which occurs despite the exercise of reasonable care upon the part of all concerned to avoid it. Appellant argues that, since the evidence presented the sole issue of respondents' negligence and not of an unavoidable accident, this instruction erroneously invited the jury to speculate upon matters not in issue. But, since appellant requested an instruction, which was given, stating the converse, she did, at the trial, consider this issue raised by the evidence. The driver's testimony, which, if believed, excused his acts, negligent under ordinary conditions, because of the sudden peril, raised this issue, for if he was not negligent, the accident was unavoidable. (*Raymond* v. *Hill,* 168 Cal. 473 [143 Pac. 743]; *Leslie* v. *Catanzaro,* 272 Pa. 419 [116 Atl. 504].) The instruction could not have been harmful to appellant for she had the burden of proving that the collision was occasioned by the negligence of respondents, which would exclude an unavoidable accident. (*Pearce* v. *Elbe, supra.*) The general denial, in the answer, of the general allegation of negligence, in the complaint, permitted respondents to rely upon the defense of unavoidable

accident. (*Pearce* v. *Elbe, supra.*) Since the issue was raised by respondents' pleading and evidence they were entitled to this instruction. (*Graham* v. *Consolidated Motor Transport Co.,* 112 Cal. App. 648 [297 Pac. 617].) ''

In *Sitkei* v. *Ralphs Grocery Co.,* 25 Cal. App. (2d) 294 [77 Pac. (2d) 311], it was said:

''The law is settled that under a general denial by defendant of a general allegation of negligence, defendant may rely upon the defense of unavoidable accident and does not waive such defense by failing to specifically plead it. (*Pearce* v. *Elbe,* 98 Cal. App. 101, 106 [276 Pac. 389]), and it is proper in such a case for the court upon request to instruct the jury on the doctrine of unavoidable accident. (*Pearce* v. *Elbe,* 98 Cal. App. 101, 105 [276 Pac. 389].) ''

A very well reasoned case with respect to the true nature of a claim that an accident was inevitable is *Rosenthal Dry Goods Co.* v. *Hillebrandt,* (Tex. Com. App.) 7 S. W. (2d) 521. There Eliza Hillebrandt sued Rosenthal Dry Goods Company to recover damages for personal injuries received through the alleged negligence of the defendant's truck driver causing a collision with a buggy in which she was riding. She obtained a verdict and judgment was entered thereon by the trial court and affirmed by the Court of Civil Appeals, but on the case being carried up to the Commission of Appeals the latter recommended to the Supreme Court a reversal of the judgment which was reversed accordingly. We excerpt the following from the commission's opinion (p. 523):

''Plaintiff in error next attacks the judgment of the Court of Civil Appeals for its holding that the issue of unavoidable accident was not raised by the evidence and for holding harmless the admitted error of the trial court in the matter of the submission of that issue. The issue was thus submitted:

'' 'Do you find from a preponderance of the evidence in this case that the collision of the two vehicles in this case was the result of an unavoidable accident?'

''The jury answered 'no'.

''The Court of Civil Appeals held that this charge was error, in that it put the burden of proof upon appellant, citing *Galveston, H. & S. A. Railway Co.* v. *Washington,* 94 Tex. 510 [63 S. W. 534], but further held that the error was not reversible because the issue was not in the case. Our

examination of the evidence convinces us that the issue was raised and, moreover, having been actually submitted, without objections by either party, neither party can raise the question there is no evidence to authorize the submission. . . .

"We agree with the conclusion of the Court of Civil Appeals that the charge was erroneous in form and subject to the objections timely made by the defendant below. It was indispensable to the plaintiff's case, and the burden was upon her to that extent, to prove that her injuries resulted from the alleged negligence of the defendant. It was not necessary that the defendant plead specially that the injuries were the result of an unavoidable accident. This was put in issue by the general denial and imposed upon the plaintiff the necessity of proving that the happening was not an unavoidable accident. This necessarily was a part of her case. While this requires the proving of a negative, nevertheless it is in keeping with sound reasoning.

" 'Whenever the establishment of an affirmative case requires proof of a material negative allegation, the party who makes such allegation has the burden of proving it, especially where the most appropriate mode of proof is by establishing the affirmative opposite of the allegation.' 22 C. J., p. 70, sec. 15. . . .

"For the error of the Court of Civil Appeals in holding that the manner of the submission of the issue of unavoidable accident was harmless, we recommend that the judgment of that court be reversed and that judgment be here rendered reversing the judgment of the District Court and remanding the cause for another trial."

The dominating consideration in dealing with the whole subject of inevitable accident, as we see the matter, is the elementary requirement that before a plaintiff can recover he must make out his case by the preponderance of all the evidence before the court or jury regardless of the stage of the case at which it may have appeared or the particular party who introduced it. To do this in a negligence case he must show that the defendant was negligent and the negligence was the proximate cause of the injury complained of. But if the accident was inevitable or unavoidable that is the same thing as to say that the defendant was not negligent, or that his negligence, if any, did not cause the accident. In

other words, it is to say that the plaintiff has failed in his proof.

Returning then to the three passages from the instructions in fact given by the trial court in the instant case, which we have heretofore set out, it will be noted that the first places on the defendant the burden of establishing not his affirmative defen*se* but his affirmative defen*ses*. Thus the court adopted the view that there are two such defenses which would mean not only that of contributory negligence which is actually a defense of an affirmative nature, but also that of an inevitable accident which is essentially nothing of the sort. The second passage definitely and erroneously instructs the jury that the burden rests on the defendant to show the accident to have been unavoidable ''by a preponderance of the evidence'', while the third passage correctly enough instructs the jury to the opposite effect. The net result is to leave the jury with no clear guidance on the subject. If the plaintiffs had made out an overwhelmingly clear case on the evidence we might regard the erroneous instructions referred to as, in the circumstances, harmless, but in a case which, on the issue of defendant's negligence, is as close as this case is, we cannot treat them as otherwise than prejudicial.

It remains to mention the further defense relied on, that the respondents have not shown themselves to be the decedent's heirs. It appears that the decedent was on February 21, 1936, married in San Diego County, California, to one Helen Boyer, who was his first cousin. The laws of California interpose no obstacle to such a marriage. The marriage of first cousins is, however, unlawful in Utah. On May 30, 1936, the said Helen Boyer, under her married name, Helen Jolley, commenced an action in the District Court of the Fourth Judicial District of the State of Utah, in which she alleged the fact of her marriage at the time when it actually occurred but made no statement either with respect to where the marriage had taken place nor as to the place of residence at the time it occurred or either of the parties to it, but sought a decree of annulment on the ground that it was inhibited by Utah law. The decedent in California signed a receipt for a copy of the summons and made affidavit that he waived time in which to plead to the complaint and consented that his default might be entered and the cause at

any time heard without notice to him. On June 20, 1936, the Utah court made findings to the effect that the plaintiff in the case before it had been a *bona fide* resident of Utah for a year prior to the filing of her complaint, that the marriage was void for relationship of the parties, and entered its decree accordingly. Defendant in the instant case now contends that the Utah court was manifestly imposed upon. The evidence is to the effect that the decedent had resided in San Diego County for some six years prior to his death, and that after his marriage here he and his wife lived together for something like two months. There is no testimony as to whether there was any issue of the marriage or not, nor whether or not the decedent ever had issue otherwise than by this marriage. By stipulation in the instant case the jury was permitted to render its verdict as though no question existed with respect to whether or not the respondents were the proper parties plaintiff and that question was in the event of a verdict in their favor to be determined by the trial court. After its submission to that court the latter, though it made no express finding on the subject, directed the verdict to be entered, so that we shall assume that it determined that respondents were, as the decedent's heirs, entitled to maintain the action. The situation is, of course, that if the decedent left neither surviving spouse nor any issue, then his parents, the present respondents, are his sole heirs at law, and the proper and only necessary parties to this action. (Prob. Code, sec. 225; Code Civ. Proc., sec. 377.) If he left no issue but did leave a spouse, such spouse was an heir at law together with his parents and so should have been joined as a plaintiff (Prob. Code, sec. 223), while, if he left issue, respondents as his parents would not be his heirs at all (Prob. Code, secs. 221, 222) and therefore not entitled to maintain this action at all.

We think it true that there was a defect in respondents' proof going to the question of whether or not they were heirs of the decedent at all, the absence of issue being a necessary ingredient of proof that they are heirs, and their allegation to the effect that they are such heirs having been denied in appellant's answer. Since the answer joins issue on the subject it was respondents' burden to supply the proof and this they have not done. Respondents have requested that under article VI, section 4¾ of the Constitution, if this court deems

proof that the decedent left no issue necessary to support the judgment it permit further evidence in the form of a deposition to be taken on the subject. Since, however, the case will in any event, have to be retried, this can more readily be done in the superior court.

For such aid as it may afford to the trial court when further proceedings are had it may be proper that we indicate our views concerning appellant's contention that there is a defect of parties plaintiff for failure to join a surviving spouse. The situation in this connection is not the same as with respect to the absence of issue. Respondents were bound to show the absence of issue as part of the proof that they are heirs at law at all. They would, however, still be heirs at law even if there were a surviving spouse. The question whether or not there is one, does not, therefore, go to respondents' right to sue, but only to the question of whether or not such spouse ought to be joined with them in suing. In these circumstances the rule is that if her existence appears from the complaint her nonjoinder may be objected to by demurrer; that if there be such spouse but she is not mentioned in the complaint her nonjoinder may be objected to in the answer, but that if neither of these methods of objection is employed the defect is waived and is no ground for defeating a recovery. (*Knott* v. *McGilvray*, 124 Cal. 128 [56 Pac. 789]; *Salmon* v. *Rathjens*, 152 Cal. 290 [92 Pac. 733]; *Robinson* v. *Western States Gas & Elec. Co.*, 184 Cal. 401 [194 Pac. 39].) In the instant case, therefore, we are of the opinion that appellant can only entitle himself to litigate the question of whether or not the decedent left a surviving spouse by an amendment to his answer. We confess, however, that we do not see wherein he could gain anything by so doing, nor do we think that the situation justifies us in entering upon a discussion of the validity or invalidity of the Utah annulment decree. If the decedent did leave a surviving spouse she could either join as a plaintiff, or in case of her refusal to do so, be made a defendant. But the circumstances here shown render it highly improbable that in this case her presence would have any particular effect on the result of the litigation for her attitude as reflected in her annulment suit would presumably make it difficult for her to maintain that she was in any way financially affected by decedent's death. Should the present

respondents ultimately secure a judgment without her having been present as a party, appellant would be in no danger of being harassed by further litigation in her behalf. (*Daubert* v. *Western Meat Co.*, 139 Cal. 480 [69 Pac. 297, 73 Pac. 244, 96 Am. St. Rep. 154]; *Rabe* v. *Western Union Tel. Co.*, 198 Cal. 290 [244 Pac. 1077].)

By reason of the errors referred to in the instructions given, the judgment must be and it is reversed and the cause remanded to the superior court for retrial.

Barnard, P. J., concurred.

MARKS, J., Dissenting.—I dissent.

I cannot agree with my associates in their discussion of and conclusions reached on the instruction given on unavoidable accident. This disagreement starts with the premise on which their argument is based. They ground their argument upon the assertion that the defense of unavoidable accident is not really an affirmative defense as it purports to be, but is merely a denial of negligence, contributory negligence and proximate cause and as such is not an affirmative defense at all. There might be a case in which this premise might be correct. However, under the pleadings and facts of the instant case it is my conclusion that the defense of unavoidable accident is not merely a denial of the allegations of the complaint but is an independent affirmative defense and that the burden of proving it rested on defendant.

The question thus presented has been mentioned in California cases but I can find none in which it has been thoroughly discussed. In *Metcalfe* v. *Pacific Elec. Ry.*, 63 Cal. App. 331 [218 Pac. 486], the trial court refused to give instructions on the question of unavoidable accident. The District Court of Appeal analyzed the answer and held that it did not set up the defense of unavoidable accident and affirmed the judgment. If this case is of any value here it is only because of an inference that such defense should be pleaded. In *Pearce* v. *Elbe*, 98 Cal. App. 101 [276 Pac. 389], the court said that the Metcalfe case was not authority for holding that unavoidable accident must be specially pleaded. In the Pearce case the court remarked that a defendant could prove unavoidable accident under denials of negligence in its answer and approved the giving of instruc-

tions on that question. *Smith* v. *Hale,* 3 Cal. App. (2d) 277 [39 Pac. (2d) 445], is to the same effect. It is obvious that these cases only hint at the question here presented and are not decisive of it.

It is the law in California that "the party holding the affirmative of the issue must produce the evidence to prove it . . ." (Sec. 1981, Code Civ. Proc.) In *Wilson* v. *California C. R. R. Co.,* 94 Cal. 166 [29 Pac. 861, 17 L. R. A. 685], it was said:

"As a general rule, the burden is on the defendant to prove new matter alleged as a defense (*Osborn* v. *Hendrickson,* 8 Cal. 31; *Piercy* v. *Sabin,* 10 Cal. 22 [70 Am. Dec. 692]; *Kuhland* v. *Sedgwick,* 17 Cal. 123, 124; *Bryan* v. *Maume,* 28 Cal. 238, 244; *Mulford* v. *Estudillo,* 32 Cal. 131, 136), even though it requires the proof of a negative. 'It makes no difference, therefore, whether the actor is plaintiff or defendant, so far as concerns the burden of proof. If he undertake to make a case, whether affirmative or negative, this case must be made out by him, or judgment must go against him. Hence it may be stated, as a test admitting of universal application, that whether the proposition be affirmative or negative, the party against whom judgment would be given as to a particular issue, supposing no proof be offered on either side, has on him whether he be plaintiff or defendant the burden of proof, which he must satisfactorily sustain. If there is a case made out against a defendant, on which, if the plaintiff should close, a judgment would be entered against the defendant, then the defendant has on him the burden of proving a case by which the plaintiff's case will be defeated.' " (See, also, *Dieterle* v. *Bekin,* 143 Cal. 683 [77 Pac. 664]; *Bernesen* v. *Fish,* 135 Cal. App. 588 [28 Pac. (2d) 67].)

Section 122 of the California Vehicle Act and its amendments, and section 525 of the Vehicle Code are illuminative. I will consider only those portions of the enactments applicable to the facts of this case. Section 122 of the California Vehicle Act (Stats. 1923, p. 517) provided that a motor vehicle must be driven on the right half of a public highway "unless it is impracticable to travel on such side of the highway." This section was amended in 1929 (Stats. 1929, p. 540) but the same provision concerning the imprac-

ticability of a vehicle traveling on its right-hand side of the highway was retained. The section was again amended in 1931 (Stats. 1931, p. 2124). Its pertinent provisions were as follows: "Upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive the same upon the right half of the highway except when the right half is out of repair and for such reason impassable . . ." The Vehicle Code was adopted in 1935 (Stats. 1935, chap. 27). Section 525 of that code supplanted section 122 of the California Vehicle Act. The code section as then adopted contained the following: "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of, and as close as practicable to the right-hand curb or edge of, such roadway, except as follows: . . . (c) When the right half of a roadway is closed to traffic while under construction or repair." This code section was in effect at the time of the accident in the instant case.

From the foregoing enactments it is clear that a driver's right to pass onto his left-hand side of a road has been progressively restricted. If the 1935 enactment be given its literal interpretation, a driver could not pass to his left of the center line, unless his right half of the road in front of him were "closed to traffic while under construction or repair," without being guilty of negligence *per se* and of being liable for consequent damages proximately caused by his violation of law. I do not believe that the legislature intended to impose any such drastic consequence on the language it used in the section. A reasonable exception to the rule of the section should be found to permit the operation of motor vehicles where the right half of a highway is closed or impassable but not by reason of "construction or repair." Such exception to a city ordinance was found by the Supreme Court in *Umemoto* v. *McDonald*, 6 Cal. (2d) 587 [58 Pac. (2d) 1274], where, in considering contributory negligence, it was said:

"This exception is recognized in *Morris* v. *Purity Sausage Co.*, 2 Cal. (2d) 536 [38 Pac. (2d) 193] (also relied upon by appellant) which decision states that while the violation of a statute or ordinance as a general rule constitutes negligence, which will bar a recovery if such violation proximately contributes to the injury (19 Cal. Jur., pp. 632, 636), it may

happen that prudence and safety of life or limb require the doing of an act which would otherwise be a violation of law, and liability therefor may be avoided by showing that under the circumstances of the particular case the violation was justifiable or excusable.''

In construing legislative enactments courts must give effect, where possible, to the language used, and must carry out the intention of the legislature where it can reasonably be done. From the language of the various enactments from which I have quoted, it would seem clear that up to at least August 14, 1931, the legislature gave considerable latitude to motorists who, for various causes, desired to turn onto their left-hand side of the highway. They were permitted to do so when continuing on their right-hand side was ''impracticable''. Impracticability included numerous causes. By at least 1935, this privilege was greatly restricted. By the language of the statute it was confined to cases where the right half of the road was ''closed to traffic while under construction or repair.'' This has been extended by judicial decision to include cases where the turn was necessary to save life or limb (*Umemoto* v. *McDonald, supra.*)

It has long been the settled law in California that violation of the provisions of a statute constitutes negligence *per se* and that if such a violation proximately caused injury to one of the class which the statute was intended to protect a complete cause of action for negligence was made out when the violation of the statute and consequent injury and damage were proved. In *Lahti* v. *McMenamin*, 204 Cal. 415 [268 Pac. 644], it was said:

''In view of the finding of the jury just referred to, and this admission, it is apparent that defendant was traveling from a westerly direction on the wrong side of the street at the time his machine collided with plaintiff. Under these facts there can be no question as to defendant's negligence.''

In *Hopkins* v. *Galland Mercantile Laundry Co.*, 218 Cal. 130 [21 Pac. (2d) 553], the Supreme Court was considering the contributory negligence of a pedestrian who crossed a street at a point prohibited by a local ordinance. It was there said:

''If ordinance No. 7691 is a valid enactment it follows that at the place where he was injured the plaintiff was there in

violation of the terms of the ordinance and that he was guilty of contributory negligence as a matter of law.''

It would seem unnecessary to cite further authority in support of these firmly established principles of law. However, in view of the restriction attempted to be placed on the application of these rules by my associates in arguing that where a violation of law is proved, that under some circumstances ''the person involved is not negligent,'' and that his conduct may not be negligence at all, it would seem advisable to do so. The following cases selected from a vast number of similar import support the rules announced in the two cases already cited: *Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663] ; *Rabe* v. *Western Union Tel. Co.,* 198 Cal. 290 [244 Pac. 1077] ; *Benjamin* v. *Noonan,* 207 Cal. 279 [277 Pac. 1045] ; *Hurtel* v. *Albert Cohn, Inc.,* 5 Cal. (2d) 145 [52 Pac. (2d) 922] ; *Umemoto* v. *McDonald, supra; Schultheiss* v. *Los Angeles Ry. Corp.,* 11 Cal. App. (2d) 525 [54 Pac. (2d) 49] ; *Scalf* v. *Eicher,* 11 Cal. App. (2d) 44 [53 Pac. (2d) 368] ; *Coffey* v. *Slingerland,* 9 Cal. App. (2d) 731 [50 Pac. (2d) 830].

From the foregoing authorities it would seem clear that violation of a statute is negligence as a matter of law; that proof of such violation establishes negligence in fact; that upon proof of such violation, negligence is established as a fact in the case. Whether or not such negligence was a proximate cause of an accident, was excused by another fact, or that liability from it was avoided by contributory negligence, cannot change the rule that violation of law is negligence and that proof of such violation establishes negligence in fact and as a fact. The statute establishes the standard of due care required and violation of the statute establishes the fact of failure to exercise due care which in itself is negligence.

Of course, after proof of such negligence *per se* on the part of a defendant, a plaintiff's recovery may be defeated by proof of his contributory negligence (*Hopkins* v. *Galland Mercantile Laundry Co., supra*), or by some legal excuse for the negligence *per se* of defendant. (*Umemoto* v. *McDonald, supra.*) This is all that the language quoted by my associates from the case of *Cragg* v. *Los Angeles Trust Co.,* 154 Cal. 663 [98 Pac. 1063, 16 Ann. Cas. 1061], means.

In my opinion no other construction can be placed upon it, especially in view of the fact that the Cragg case, *supra*, and the others cited by my associates on this question were decided long before the present drastic provisions of the Vehicle Code were enacted.

Under the rule announced by the Supreme Court in the case of *Wilson* v. *California C. R. R. Co., supra*, I must proceed to analyze the evidence to determine if that introduced by plaintiffs made out a case against defendant on which a judgment would have been entered, for if such a case were made out against him then defendant had placed on him the burden of proving a case by which plaintiff's case would have been defeated.

Plaintiffs were only required to prove negligence on the part of defendant, the proximate cause of the accident and consequent injuries, the extent of their damages, and heirship. This they did. Their evidence was clear, convincing and satisfactory on all the necessary elements except, perhaps, heirship. Negligence of the defendant was clearly and satisfactorily established when it was proved that defendant drove onto his left-hand side of the highway when the right half in front of him was not "closed to traffic while under construction or repair." (Sec. 525, Vehicle Code.) The evidence of this negligence *per se* is clear and convincing and its truth is admitted by defendant. There was also the further proof of lack of due care on the part of defendant in failing to observe an object on the road in front of him when that object should have been made visible by his headlights when he was almost three hundred feet distant from it and when he could have stopped and avoided turning onto his left-hand side of the highway. (Sec. 670, Vehicle Code.) The question of proximate cause was settled by the verdict of the jury. There is ample evidence to support this implied finding. Damages were also proved and their amount fixed by the jury. There is no complaint of the amount of the damages awarded.

Upon such proof plaintiffs could have rested their case and could have confidently expected a verdict and judgment in their favor. It is true that it was in the evidence of plaintiffs that the fact of a horse being on the highway was first developed. That did not change the evidentiary facts neces-

sary to be established to support plaintiffs' case.' It injected into the case, out of order, a fact essential to defendant's case. This merely involves a question of order of proof which is not important here.

In order to escape the effect of plaintiff's proof and escape a judgment against him, it was necessary for defendant to prove either that defendant's admitted negligence was not the proximate cause of the accident or that the deceased was guilty of contributory negligence, or some fact relieving him from the results of his admitted negligence.

Thus we see that upon the plaintiffs rested the burden of proving negligence, proximate cause and damages. This they did, and, had the case been then closed, judgment should have gone for them. Upon the defendant rested the burden of proving excuse for his admitted negligence under the settled rule that the party having the affirmative of an issue must prove it. This burden he attempted to meet by proving the separate affirmative defense of unavoidable accident which he had set up in his pleadings. Instead of simply denying negligence under this defense, defendant in his own testimony admitted that he had violated the provisions of section 525 of the Vehicle Code by driving on his left side of the highway when his half was not ''closed to traffic while under construction or repair.'' Thus he admitted negligence *per se*. He sought to justify this maneuver and excuse his violation of law with evidence that it was necessary to save life or limb. It seems to me that under the evidence of this case this defense of unavoidable accident was just as much of an independent affirmative defense as that of contributory negligence which must be supported by a preponderance of the evidence.

On the question of what constitutes an affirmative defense, the case of *Shropshire* v. *Pickwick Stages,* 85 Cal. App. 216 [258 Pac. 1107] (hearing denied), is persuasive. It is there said:

''Measuring the answer by these rules, it seems clear that the defendants, in addition to a special denial of any negligence on their part, have further alleged that the accident and resulting injuries to plaintiff were caused *solely and. alone* by the carelessness and negligence of the operator of the Ford car, which brings into the case new matter not

raised by the complaint, which constitutes an affirmative defense.

"The law in this state is well settled that the burden is on the defendants to prove new matter alleged as an affirmative defense. (Secs. 1869 and 1981, Code Civ. Proc.; *Valente* v. *Sierra Ry. Co.*, 151 Cal. 534 [91 Pac. 481]; *Wilson* v. *California C. R. R. Co.*, 94 Cal. 166, 172 [17 L. R. A. 685, 29 Pac. 861]; 10 Cal. Jur. 786, 787, and cases there cited.)

"The instruction complained of reads as follows: 'The defendant states in its defense that the accident was due solely to the negligence and carelessness of the driver of the Ford car, the car of Grove, and the burden is upon the defendant to prove that. That is an affirmative issue, and the burden is upon the defendant to prove that defense by a preponderance of the evidence in the whole case. Unless you find from a preponderance of the evidence on the whole case that this defense is made out, or if you find that the evidence is equally balanced, you will find against the defendant on that issue.'

"The appellant contends that this instruction is erroneous for the reason that it imposes the burden upon the defendants of proving by a preponderance of the evidence that the accident was due solely to the negligence of the driver of the Ford car, thereby in effect requiring the defendants to prove that it was in no way responsible for the accident, and wholly ignored the well-settled rules in this state that the burden of proof is always upon the plaintiff throughout the trial of the case to prove the negligence of the defendants and that such negligence was the proximate cause of the injury. With this contention we cannot agree. This instruction refers solely to the affirmative defense raised by the defendants in their answer, as it concludes, 'unless you find from a preponderance of the evidence on the whole case that this defense is made out, or if you find that the evidence is equally balanced, you will find against the defendant *on that issue*,' meaning obviously the issue raised by the affirmative defense in the answer that the operator of the Ford car was alone responsible for the accident, and had no reference to the negligence of the defendants. It is further evident that the instruction complained of related to the affirmative issue raised by the answer, by the fact that the court gave a number of instructions relative to the burden of proof and

the preponderance of evidence as between the plaintiff and the defendants.''

By an affirmance of the judgment in favor of the plaintiff the quoted instruction was approved.

In speaking of the defense of inevitable accident in *State Compensation Ins. Fund* v. *Lamb,* 96 Cal. App. 236 [273 Pac. 1080], the court said:

''The defendants complain of an instruction given by the trial court, number 46. That instruction was addressed to the question as to who should prove an inevitable accident. It is difficult, under the ·issues made by the pleadings, to see just what was the pertinency of the subject matter. Be that as it may, the defendants introduced it in the opening statement made by their attorney and thereafter followed up the subject and introduced proof thereon. There is nothing in the case showing that there was any duty on the part of the plaintiffs to introduce evidence in support of the existence of the theory of inevitable accident, and if the subject matter be asserted as an affirmative defense, then the burden was on the defendants to make the showing.''

I cannot distinguish the instant case from the case of *Parker* v. *Auschwitz,* 7 Cal. App. (2d) 693 [47 Pac. (2d) 341]. That was a case of damages for injuries following a collision of two motor vehicles. The proved negligence of Auschwitz was in having his truck on his left-hand side of the road. The driver of the car in which plaintiffs were riding went to its left-hand side of the road in an attempt to avoid the collision. The defendant attempted to excuse his negligence in violating the law by testifying that his truck skidded on ice and over onto its left-hand side of the road without his fault. In commenting on this defense the court said:

''The burden therefore rested upon appellant to excuse or justify his position upon the highway. This he attempted to do by showing the truck skidded, and while the mere skidding of an automobile is not necessarily negligence (*Smith* v. *Hollander,* 85 Cal. App. 535 [259 Pac. 958, 58 L. R. A. 268] ; *Lambert* v. *Eastern Massachusetts etc. Co.,* 240 Mass. 495 [134 N. E. 340, 22 A. L. R. 1291], the burden of establishing justification is on appellant.'' (Defendant.)

My associates attempt to distinguish the Parker case from the instant case by saying that the Parker case was tried by the court and that no instruction to a jury was involved. That does not seem to me to be adequate. A trial judge is required to instruct a jury on the law applicable to the facts of the case. Where there is no jury he is required to decide the case according to the same law. Because there was no jury and consequently no instructions does not change the law. If the burden of proving an excuse for being on the left-hand side of the road rests on a defendant in a case tried by the court the same burden should rest upon him in a case where there is a jury.

I am not unmindful of the rule that the phrase, "burden of proof," is used in varying senses and in some cases without due regard to clear distinction in meaning. It sometimes means the burden of meeting a *prima facie* case made by the opposing party, and sometimes means the burden of producing a preponderance of the evidence on a material question in controversy. (10 Cal. Jur. 782.) Where it is used in the sense of meeting a *prima facie* case of an adversary it does not require the production of a preponderance of the evidence. When it is used in the sense of establishing an independent affirmative defense which is more than a denial of the allegations of the other party a preponderance of the evidence is required. The real test is an answer to the question: Which side would be successful on the issue if no evidence were introduced in support of it? (*Scott* v. *Wood*, 81 Cal. 398 [22 Pac. 871].) The answer to this question, under the facts here, seems obvious, for without evidence excusing defendant from the consequences of his admitted negligence, judgment should, and undoubtedly would have gone against him. Therefore the burden of proving an excuse for his admitted negligence by a preponderance of the evidence rested upon him.

If the burden of proving the defense of contributory negligence by a preponderance of all of the evidence rests on a defendant, as it does (19 Cal. Jur. 697), and if the burden of proving by a preponderance of the evidence that an accident was caused by the negligence of a third party, rests on a defendant, as has been held (*Shropshire* v. *Pickwick Stages, supra*), then I am unable to see how the burden of

proving an excuse for admitted negligence, by a preponderance of the evidence, should not also rest upon a defendant. He should have the burden of proving such a defense where, as here, it is much more than a denial of plaintiffs' allegations of defendant's negligence.

If it be true that my associates have correctly argued that defendant's driving onto his left-hand side of the road was not negligence at all because of the necessity for that maneuver to save life and limb, still it would not follow that the burden of justifying it by a preponderance of the evidence was not on defendant. It was no part of plaintiffs' case to prove unavoidable accident. (*State Compensation Fund* v. *Lamb, supra.*)   Plaintiffs would have been successful on that issue if no evidence had been introduced to support that plea. As that issue was no part of plaintiffs' case (it was new matter injected into the case by defendant) and as defendant would have had judgment against him on that issue if it were not supported by evidence, it follows that the burden of proving such defense by a preponderance of the evidence lay upon him. (*Scott* v. *Wood, supra.*)

In my opinion the instruction on unavoidable accident given by the trial judge was not prejudicially erroneous under the allegations of the pleadings in this case and the evidence introduced in support of them.

If I correctly understand the portion of the main opinion dealing with the sufficiency of the proof of heirship, nothing is there decided, although it is strongly intimated that plaintiffs' proof of heirship was insufficient.

There is in the record an exemplified copy of the judgment roll in the case of *Helen Jolley* v. *Joseph M. Jolley*, decided by the District Court of the Fourth Judicial District of the State of Utah. The complaint in that action alleged "That there is no issue of said marriage" of Helen and Joseph M. Jolley. This allegation was found by the court to be true. It was also found that for more than a year prior to the filing of her complaint plaintiff "was, and now is, a *bona fide* resident of Utah County, Utah." The judgment annulled the marriage. On its face it is a valid, final judgment by a court of competent jurisdiction. In my opinion this record completes at least *prima facie* proof of heirship

sufficient to support the judgment. (*Rabe* v. *Western Union Tel. Co., supra.*).

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 8, 1938, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 7, 1938.